Alexander **WHITFIELD**, Defendant Below, Appellant,

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: Feb. 24, 1987.

Decided: April 22, 1987.

---

Joseph M. Bernstein, Wilmington, for appellant.

Richard E. Fairbanks, Jr., Chief of Appeals Div., and Charles E. Butler, Deputy Atty. Gen., Dept. of Justice, Wilmington, for appellee.

Before CHRISTIE, C.J., HORSEY and WALSH, JJ.

WALSH, Justice:

The appellant, Alexander Whitfield, was convicted after a jury trial of robbery first degree and possession of a deadly weapon during the commission of a felony. He appeals only the weapon conviction. We reverse that conviction.

## I

The particulars of the robbery incident are not in serious dispute. On August 8, 1985, Whitfield approached an automobile containing three people. The State claims he pointed a sawed-off shotgun at the driver, Leon Green, ordered the occupants out of the car, and ordered Green to leave the keys in the car or he'd "blow his head off." After the occupants exited the car, Whitfield got in it and drove away.

On November 24, 1985, in connection with the arrest of a Nathan Black, the State recovered a shotgun. The State never established a connection between Black and Whitfield, and introduced no evidence as to the whereabouts of that gun between August 8, 1985, and November 24, 1985. However, in Whitfield's trial, the State sought to introduce the gun as the actual instrumentality Whitfield used in his August 8 robbery.

To authenticate the gun as required by D.R.E. 901(a),[1] the State elicited testimony from Jacqueline Johnson, one of the occupants of the car, that the tendered gun "looks like" the weapon in Whitfield's possession "because of the tape" on the gun's handle. Green could not identify the tendered gun. Whitfield's girlfriend, Tara Owens, stated that Whitfield's weapon had been "wrapped up," and opined that it was "consistent with the size of" the tendered gun. The Superior Court admitted the gun over defense objection.

## II

Appellant makes two arguments that the admission of the gun was error. His first argument is that 11 *Del.C.* § 222(5) required the State to establish that the admitted gun was operable on the date of the offense.

11 *Del.C.* § 222(5) states that "deadly weapon" includes "any weapon from which a shot may be discharged." Under this language, a weapon need not be loaded to be "deadly." *Donophan v. State*, Del.Supr., 424 A.2d 301, 304 (1980). In *Donophan*, this Court relied upon *State v. Quail*, Del.Gen.Sess., 92 A. 859 (1914), where the court, specifically rejecting the argument appellant now advances, held that a weapon may be "deadly" even though "in such a defective condition that it could not be fired." 92 A. at 859. We adhere to *Donophan* and *Quail*, and accordingly reject appellant's first contention.

Appellant next contends that the admission of the gun was error due to insufficient authentication or identification under D.R.E. 901(a). We agree, and therefore reverse his conviction of possession of a deadly weapon during the commission of a felony.

In general, the decision of whether to admit evidence in particular circumstances is within the trial judge's discretion. *Ciccaglione v. State*, Del.Supr., 474 A.2d 126, 130 (1984); *Lampkins v. State*, Del.Supr., 465 A.2d 785, 790 (1983); *Thompson v. State*, Del.Supr., 399 A.2d 194, 198–99 (1979). Federal appellate courts reviewing trial court rulings concerning authentication or identification apply a deferential abuse of discretion standard. *United*

1. This provision reads:
   **RULE 901. REQUIREMENT OF AUTHENTICATION OR IDENTIFICATION.**
   (a) **General Provision.** The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

*States v. Coleman,* 10th Cir., 524 F.2d 593, 594 (1975); *United States v. Howard-Arias,* 4th Cir., 679 F.2d 363, 366 (1982), *cert. denied* 459 U.S. 874, 103 S.Ct. 165, 74 L.Ed.2d 136.[2]

■ Authentication or identification under D.R.E. 901(a) requires "evidence sufficient to support a finding that the matter in question is what its proponent claims." The State may authenticate a weapon it claims was the actual instrumentality of a crime in two ways. It may have witnesses visually identify the weapon as the actual instrumentality of the crime, or it may establish a " 'chain of custody,' which indirectly establishes the identity and integrity of the evidence by tracing its continuous whereabouts." *United States v. Zink,* 10th Cir., 612 F.2d 511, 514 (1980); *see also* D.R.E. 901, comment; *United States v. Gay,* 10th Cir., 774 F.2d 368, 374 (1985); *United States v. Mendel,* 2d Cir., 746 F.2d 155, 166–67 (1984), *cert. denied* 469 U.S. 1213, 105 S.Ct. 1184, 84 L.Ed.2d 331 (1985); *United States v. Howard-Arias,* 679 F.2d at 366; *United States v. Phillips,* 7th Cir., 640 F.2d 87, 94 (1981), *cert. denied* 451 U.S. 991, 101 S.Ct. 2331, 68 L.Ed.2d 851.

■ Contrary to the State's contention, no witness in this case positively identified the admitted weapon as the actual instrumentality used in Whitfield's robbery. Consequently, to authenticate that weapon sufficiently, the State was required adequately to trace its continuous whereabouts, *i.e.*, its physical location from the time of the commission of the underlying offense until the time of trial.

This requirement placed on the State a lenient burden. The State was required to eliminate possibilities of misidentification and adulteration, not absolutely, but as a matter of reasonable probability. *Tatman v. State,* Del.Supr., 314 A.2d 417, 418 (1973); *Clough v. State,* Del.Supr., 295 A.2d 729, 730 (1972); *United States v. Jones,* E.D.Pa., 404 F.Supp. 529, 542 (1975), *aff'd,* 538 F.2d 321 (3d Cir.1976). It had to "convince the Court that it is improbable

that the original item had been exchanged with another or otherwise tampered with." *United States v. Howard-Arias,* 679 F.2d at 366; *see also United States v. Mendel,* 746 F.2d at 167.

This burden, though lenient, required the State to establish a connection between the weapon and the defendant. As stated in *Gass v. United States,* D.C.App., 416 F.2d 767, 770 n. 8 (1969), "tangible objects become admissible in evidence only when proof of their original acquisition and subsequent custody forges their connection with the accused and the criminal offense." The prosecution must "prove a rational basis from which the jury may conclude that the exhibit did, in fact, belong to the appellants." *United States v. Natale,* 2d Cir., 526 F.2d 1160, 1173 (1975), *cert. denied* 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 193 (1976). More specifically, "(1) the foundation witness must state that the instrumentality is at least like the one associated with the crime and (2) evidence must establish that the instrumentality is connected to the defendant and the commission of the crime." *Malott v. State,* Ind.Supr., 485 N.E.2d 879, 884 (1985).

Factors relevant in a chain of custody analysis include "the nature of the article, the circumstances surrounding its preservation and custody, and the likelihood of intermeddlers having tampered with it." *United States v. Gay,* 774 F.2d at 374. Also, "heightened scrutiny is appropriate for chain of custody identification claims," as opposed to chain of custody claims of tampering or change of condition, because "Courts need exercise greater care when the issue concerns the very identity of the evidence, rather than just possible changes in its condition." *United States v. Lampson,* 7th Cir., 627 F.2d 62, 65 (1980).

■ The State here failed adequately to trace the continuous whereabouts of the admitted weapon or sufficiently link it to appellant or the scene of the robbery. Johnson's and Owens' testimony satisfied

---

**2.** Because D.R.E. 901(a) tracks F.R.E. 901(a), decisions construing the latter Rule aid our

analysis here.

the similarity requirement articulated in *Malott v. State*, 485 N.E.2d at 884, but no evidence satisfied the nexus requirement. For instance, no evidence tended to show that the admitted weapon and the instrumentality of the crime shared a unique trait.[3] No link was ever established between Black and Whitfield or Black and the scene of the crime. No direct link was established between Whitfield and the admitted weapon, such as fingerprint evidence. No direct link was established between that weapon and the crime scene, such as bullet fragments from that gun being found at the crime scene. Certainly the circumstances of the State's recovery and preservation of the admitted weapon established no link between it and Whitfield or the crime scene.

In addition, the whereabouts of the admitted weapon were unaccounted-for for three and one-half months following the robbery. That time period was crucial concerning the collection of evidence pertaining to that robbery. *See McElfresh v. Commonwealth*, Ky.App., 243 S.W.2d 497, 499 (1951). Combined with the missing evidential links in the State's case, and the undeniable possession of the admitted weapon by an "intermeddler," *i.e.* Black, the long, unaccounted-for disappearance of the weapon during this period rendered the State's authenticating evidence inadequate as a matter of law. *See Id.* at 499–500; *United States v. Robinson*, E.D.Tenn., 367 F.Supp. 1108, 1109–1110 (1973). Consequently, the Superior Court abused its discretion in admitting the weapon recovered from Black as the actual instrumentality used in Whitfield's robbery.

We recognize that in most of the decisions cited above and in numerous other decisions, courts have admitted evidence over authentication objections based on D.R.E. 901(a) and F.R.E. 901. Those decisions do not aid the State's position on appeal. Rather, they highlight, by contrast, the paucity of evidential links here between the admitted weapon and appellant or the crime scene.

---

3. A detective called as a witness for the State testified that the tape on the admitted weapon

## III

■ Appellant also contends that the Superior Court erred in summarily denying a *pro se* motion for relief he filed nearly two months after his conviction, based on a claim of ineffective assistance of trial counsel. Because appellant's motion was not timely filed, this Court finds no error in the Superior Court's ruling.

If this motion was raised under Super.Ct. Crim.R. 35, it was premature. That Rule by its terms applies only to "any person who has been sentenced." The appellant filed his *pro se* motion before being sentenced. Furthermore, Rule 35(a) expressly provides that "postconviction relief shall not be available so long as there is a possibility of taking a timely appeal from a judgment of conviction." Here appellant filed his *pro se* motion while the possibility of taking a timely appeal remained open to him. Indeed, his subsequent timely appeal is the subject of this opinion.

■ Appellant's new post-trial counsel asked the Superior Court to consider appellant's *pro se* motion a motion for a new trial. Super.Ct.Crim.R. 33 governs motions for new trials in criminal cases. It provides that such motions, if not based on newly discovered evidence, "shall be made within 10 days after verdict or finding of guilty or within such further time as the Court may fix during the 10 day period." Here appellant's *pro se* motion was not based on newly discovered evidence. It was not filed within 10 days after the verdict and the Superior Court fixed no "further time" for it to be filed. Consequently, appellant's motion was filed too late under Rule 33. *See State v. Halko*, Del.Super., 193 A.2d 817, 820 (1963), *aff'd*, 204 A.2d 628 (1964).

## IV

The Superior Court's summary denial of appellant's *pro se* post-trial motion is AFFIRMED. Appellant's conviction of pos-

---

was not unusual.

session of a deadly weapon during the commission of a felony is REVERSED.