Nephtali TRICOCHE, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: March 9, 1987.
Decided: May 5, 1987.

Anthony A. Figliola, Jr., Wilmington, for appellant.

Richard E. Fairbanks, Jr., Deputy Atty. Gen., for appellee.

Before CHRISTIE, C.J., and WALSH and HOLLAND, JJ.

HOLLAND, Justice.

Following a non-jury trial in the Superior Court in and for New Castle County, the defendant, Nephtali Tricoche, was convicted of various drug related offenses. On appeal, the defendant raises two claims. First, he asserts that the State did not adequately establish a chain of custody for the drugs that were admitted into evidence. Second, he asserts that he was denied his right of self-representation. The State moved to affirm the judgment of the Superior Court pursuant to Supreme Court Rule 25(a) on the grounds that it is manifest upon the face of the appellant's brief that this appeal is without merit. We find that the State's motion should be granted and that the convictions should be affirmed.

I

The first claim which the defendant raises on appeal relates to the adequacy of the chain of custody of the drugs that were introduced into evidence at trial over the objection of defense counsel. The substantive facts of the crimes are not in dispute. The defendant, however, does challenge the procedures that were followed.

Officer James Lane of the City of Wilmington Police Department testified that he purchased a package of cocaine from

Tricoche and a co-defendant. Following the purchase, Officer Lane stated that he immediately directed fellow officers to the defendant and the co-defendant. According to Lane, the defendant dropped "other drugs" as Lane and the other officers approached. All of the drugs which were seized at the crime scene were given to Officer Lane.

The drugs were "field tested" at the scene of the crime by Officer Nolan, in the presence of Officer Lane. Following the field tests, Officer Lane placed the packaged drugs into a departmental evidence envelope which he sealed and initialled. The drugs were in "little bags" when they were deposited into the evidence envelope. The "little bags" were not initialled or marked by Officer Lane.

The defendant's attorney objected to the admission of "little bags" into evidence when Officer Lane testified at trial that *he* did not know if the "little bags" marked for identification were the same packages that he had placed into the sealed evidence envelope. Officer Lane did testify, however, that he had secured the sealed evidence envelope in the police department's evidence locker, removed the envelope from the evidence locker and, in the normal course of business turned it over to the State medical examiner's office for a chemical analysis of its contents.

The State completed its evidence relating to the chain of custody of the "little bags" of drugs with the testimony of a forensic chemist, Mr. Tezcan. Tezcan worked for the medical examiner's office. Tezcan testified that he performed the chemical analysis on the contents of the evidence envelope and described his actions when he received the sealed evidence envelope. First, Tezcan examined the exterior portion of the evidence envelope for signs of tampering or damage during storage. After Tezcan satisfied himself that the evidence envelope showed no signs of tampering or damage, he opened the end of the evidence envelope which was opposite to the seal.

Tezcan then removed the contents from the envelope. Tezcan testified that the contents were the "little bags" of drugs marked for identification at trial. Tezcan compared the contents of the envelope with the evidence receipt. Having further satisfied himself that the contents ("little bags") and the evidence receipt matched, Tezcan proceeded with his chemical analysis. Following the chemical analysis, the evidence envelope and its contents were secured by Tezcan until the defendant's trial.

At trial, the defendant stipulated to the accuracy of the results of Tezcan's chemical analysis. The trial court ruled that an adequate chain of custody had been established and admitted the "little bags" of drugs into evidence. The defendant's sole challenge to the chain of custody at trial and on appeal is that the individual packages ("little bags") of drugs that were placed inside of the sealed evidence envelope were not initialled or marked by Officer Lane.

■ In general, the decision of whether to admit evidence, in particular circumstances, is within the trial judge's discretion. *Ciccaglione v. State*, Del.Supr., 474 A.2d 126, 130 (1984); *Lampkins v. State*, Del.Supr., 465 A.2d 785, 790 (1983); *Thompson v. State*, Del.Supr., 399 A.2d 194, 198–99 (1979). The exercise of judicial discretion in making evidentiary rulings often centers around authentication or identification. Under D.R.E. 901(a), the party offering an item for evidence at trial is required to present other "evidence sufficient to support a finding that the matter in question is what its proponent claims." The State may authenticate an item which it claims was involved with a crime in two ways. "It may have witnesses visually identify the item as that which was actually involved with the crime, or it may establish a 'chain of custody,' which indirectly establishes the identity and integrity of the evidence by tracing its continuous whereabouts."[1] *Whitfield v. State*, Del.Supr., 524 A.2d 13, 16.

**1.** *United States v. Zink*, 612 F.2d 511, 514 (10th Cir.1980); *see also* D.R.E. 901, comment; *United States v. Gay*, 774 F.2d 368, 374 (10th Cir.1985); *United States v. Mendel*, 746 F.2d 155, 166–67 (2d Cir.1984); *cert. den.*, 469 U.S. 1213, 105 S.Ct. 1184, 84 L.Ed.2d 331 (1985); *United States v.*

In the present case, no witness could positively identify the "little bags" of drugs as the actual drugs seized from the defendant. A similar situation presented itself in *Whitfield.* In *Whitfield,* the evidence in issue was a sawed-off shotgun and no witness could positively identify the weapon as the actual instrumentality used by Whitfield in the alleged robbery. Consequently, in this case, as in *Whitfield,* to authenticate the drugs, the State was required to adequately trace their continuous whereabouts, i.e., their physical location from the time of their seizure at the crime scene until the time of trial.

In *Whitfield,* we held that relevant factors in a chain of custody analysis included "the nature of the article, the circumstances surrounding its preservation in custody, and the likelihood of intermeddlers having tampered with it. *Id.* Citing *United States v. Gay,* 774 F.2d 368, 374 (1985). This holding was entirely consistent with the test for a proper chain of custody which was established by this Court in *Clough v. State,* Del.Supr., 295 A.2d 729 (1972). The State was required to eliminate possibilities of misidentification and adulteration, not absolutely, but as a matter of reasonable probability. *Tatman v. State,* Del.Supr., 314 A.2d 417, 418 (1973); *Clough v. State,* Del.Supr., 295 A.2d 729, 730 (1972). The State had to "convince the Court that it is improbable that the original item had been exchanged with another or otherwise tampered with." *United States v. Howard-Arias,* 679 F.2d at 366; *see also United States v. Mendel,* 746 F.2d at 167. *Whitfield v. State,* p. 16. In *Clough,* the Court concluded that "[t]he test is reasonable probability that no tampering occurred." 295 A.2d at 730.

Our holding in *Whitfield* expanded *Clough* and also required the State to prove a rational basis from which the trier of fact may conclude that the exhibit did, in fact, belong to the defendant. The State can satisfy this burden by producing evidence which satisfies a two-pronged test,

best described in *Whitfield* as nexus and similarity. More specifically, (1) the foundation witness must state that the instrumentality is at least like the one associated with the crime and (2) the evidence must establish that the instrumentality is connected to the defendant and the commission of the crime. *Whitfield v. State,* Del. Supr., p. 16.

■ In this case, Officer Lane testified that the "little bags" of drugs which were offered into evidence were similar to those seized at the crime scene. Officer Lane further testified that he placed the drugs that had been seized from the defendant into unmarked "little bags". Those bags were inserted into a *marked* evidence envelope that was subsequently sealed and secured in a police evidence locker until delivery to the State chemist. The chemist testified that when he received the marked evidence envelope there were no signs of tampering or damage. The chemist also testified that he personally satisfied himself that the contents of the sealed evidence envelope matched the evidence receipt. We find that this evidence by the State sufficiently connected the "little bags" of drugs offered at trial with the defendant at the crime scene.

In this case, the State demonstrated a chain of custody which established the identity and integrity of the evidence by tracing its continuous whereabouts. The State met its burden of eliminating with reasonable probability, misidentification or adulteration, as required under *Clough.* The State also met its burden of establishing the similarity and nexus requirements established under *Whitfield.* The "little bags" of drugs were properly admitted into evidence.

## II

■ The defendant's second claim on appeal is an allegation that he was denied his right of self-representation. *Faretta v.*

*Howard-Arias,* 679 F.2d 363, 366 (4th Cir.1982); *cert. den.* 459 U.S. 874, 103 S.Ct. 165, 74 L.Ed.2d 136 (1982); *United States v. Phillips,* 640 F.2d

87, 94 (7th Cir.1981), *cert. den.* 451 U.S. 991, 101 S.Ct. 2331, 68 L.Ed.2d 851 (1981).

*California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Hooks v. State,* Del. Supr., 416 A.2d 189, 197 (1980). The jurisdiction of this Court to review criminal causes is set forth in Article IV, § 11(1)(b) of the Delaware Constitution which authorizes it "to determine finally all matters in error in the judgments and proceedings" of the Superior Court in criminal causes. The right to review, by its very nature, can only be accomplished with an accurate record of the proceedings in the Superior Court. *Parker v. State,* Del.Supr., 8 Storey 102, 205 A.2d 531 (1964).

The rules of this Court direct all parties to order a transcript and to include in their appendix those portions of the record which are relevant to any claims on appeal. In particular, this defendant, as the appellant, had the burden of producing "such portions of the trial transcript as are necessary to give this Court a fair and accurate account of the context in which the claim of error occurred" and the record "must include a transcript of all evidence relevant to the challenged finding or conclusion." Supreme Court Rule 9(e)(ii) and Rule 14(e).

The defendant alleges that the Superior Court denied his request for self-representation when it was raised at the call of the criminal calendar. The notice of appeal in this case and the appendix in the defendant's opening brief make no reference to a transcript of the proceedings at the call of the criminal calendar. The only reference to that pretrial proceeding appears in the defendant's appendix when the defendant's attorney informed the trial judge of an earlier ruling that the defendant could not represent himself.[2]

There is no record on appeal showing the defendant's actual request to represent himself and there is no record of the facts which led the Superior Court to rule upon that request, if made. The defense counsel's summary of what occurred, that appears on one page of the defendant's appendix in this appeal, provides an inadequate basis for evaluating the claim relating to the alleged denial of self-representation.

 The defendant's opening brief in this case states "the record *would* show that the defendant was sufficiently advised of the dangers of self-representation and was willing to accept the dangers." (emphasis added). This Court can only evaluate issues raised on appeal by reviewing the facts that actually appear in the record. The failure of the defendant to include in the record adequate transcripts of the proceedings, as required by the rules of this Court, precludes appellate review of his claim that he was denied self-representation.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court is

AFFIRMED.

---

2. The Superior Court trial judge was not the judge who presided at the call of the criminal calendar.