Nathan GUINN, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 350,2003.

Supreme Court of Delaware.

Submitted: Dec. 16, 2003.
Decided: Feb. 11, 2004.

Sandra W. Dean, Office of the Public Defender, Dover, for Appellant.

John Williams, Department of Justice, Dover, for Appellee.

Before VEASEY, Chief Justice, BERGER, and JACOBS, Justices.

PER CURIAM:

The appellant, Nathan Guinn, appeals from his conviction by a Superior Court jury, of Possession with Intent to Deliver a Narcotic Schedule II Controlled Substance (in violation of 16 *Del. C. §* 4751); Possession of a Narcotic Schedule II Controlled Substance Within 300 feet of a Church (in violation of 16 *Del. C. §* 4768); and Possession of Drug Paraphernalia (in violation of 16 *Del. C. §* 4771). Guinn claims that the trial court abused its discretion in two respects: (1) by admitting into evidence the purported cocaine that was on Guinn's person at the time of his arrest, and (2) by denying Guinn's motion for a judgment of acquittal on the charge of Possession with Intent to Deliver Cocaine. In our view, neither ground has merit. Accordingly, we affirm.

### Facts

On the evening of July 27, 2002, probation officer Douglas Watts and City of Dover Police Officer Paul Kuntzi were patrolling as part of the Operation Safe Streets program in Dover, Delaware. While they were driving toward the intersection of Reed and South New Streets, they observed Guinn walking toward their car. Because Guinn was out past his probation curfew and was wanted for an outstanding capias, the officers stopped Guinn near the Holy Trinity Church and placed him in handcuffs while they searched him.

During his search of Guinn's cargo pants, Officer Kuntzi discovered $424 cash, a piece of suspected crack cocaine, and a small screwdriver. Guinn claimed that the pants he was wearing did not belong to him, but he did not identify the owner of the trousers. Guinn also initially claimed that the $424 of cash belonged to his girl-friend, but he later told the police that the cash belonged to someone else who had been accompanying him while he was walking down the street that evening.

After his detention and search, Guinn was taken into custody. Officer Kuntzi placed the drug evidence (the suspected crack cocaine) into an envelope and deposited the envelope in the secured evidence locker at the Dover police station. The substance seized from Guinn was later analyzed by a forensic chemist, who determined, in October 2002, that the substance consisted of 2.45 grams of crack cocaine. The police also photographed the cash that had been seized from Guinn, which consisted of one $100 bill, one $50, six $20 bills, and five $10 bills, plus assorted $5 and $1 bills.

After being tested, the cocaine was then returned to the Dover Police Department, and was placed in an envelope that remained in a secure locker until December 16, 2002. At that time, the envelope was removed from the locker, the cocaine was removed from the envelope, and the evidence was examined by Guinn's former counsel. After the December 16, 2002 inspection, the drugs were not returned to the evidence envelope. Two days later, however, Robert Neylan, a Dover Police Department evidence technician, located the drugs in the same Dover Police station conference room in which the inspection had occurred two days earlier. The drugs were on the same blue folder in which they had been placed two days before. There was no evidence that the cocaine had been tampered with.

Guinn was convicted at the conclusion of his trial, at which he elected not to testify.

### The Alleged Improper Admission of The Seized Cocaine Into Evidence

Guinn's first claim is that the trial court erred by admitting into evidence the

cocaine that had been found in the police conference room on December 18, 2002. Guinn argues that the State did not meet its burden of authenticating the evidence by eliminating the possibility of misidentification or adulteration as a matter of reasonable probability. Both sides agree that the standard by which this claim is reviewed is abuse of discretion.[1]

This claim lacks merit because as a matter of fact and law, the State did meet its burden. The State may authenticate an item that it claims was involved in a crime in two ways. The State "'. . . may have witnesses visually identify the item as that which was actually involved with the crime, or it may establish a "chain of custody" which indirectly establishes the identity and integrity of the evidence by tracing its continuous whereabouts.'"[2] Here, the State used both methods to authenticate the contraband drug evidence.

In this case, Guinn's sole challenge is to the chain of custody. His challenge fails, because the alleged break in the chain of custody occurred only after the contraband had already been tested by a forensic chemist (and determined to be cocaine) in October 2002, and after that evidence had been returned to the Dover Police Department. Even if the entire substance had been consumed in the testing or had been lost (neither of which occurred here), the testing results were still admissible to establish, *prima facie*, that Guinn was in possession of cocaine.[3]

Moreover, Guinn's former counsel, who examined the contraband on December 16, 2002, testified that the cocaine introduced at trial appeared to be the same substance he had previously observed. Both Officers Watts and Kuntzi gave similar testimony, and were able to make that identification because the crack cocaine rock had distinctive black markings on it. Officer Watts testified that the cocaine rock had black markings all over it; Officer Kuntzi testified that the cocaine rock had black scribbling on it, and that he had never seen such markings before or since. Thus, the drug evidence was properly authenticated by the alternative means of eyewitness identification permitted under Delaware law.

In addition, Robert Neylan, the Dover Police evidence technician, confirmed the other links in the chain of custody. There is no identification issue during the interval between the time of the seizure in July 2002 and the time the drugs were signed out to Guinn's former attorney for inspection on December 16, 2002. Although the drugs were not returned to the evidence envelope immediately after the December 16 inspection, Neylan did locate the drugs two days later in the same envelope in the same conference room where the inspection had occurred two days before, and he testified that there was no evidence that the drugs had been altered or tampered with. In these circumstances the State has discharged its burden to demonstrate to a reasonable probability that the cocaine admitted into evidence at trial was the same substance that was seized from Guinn in July 2002.

### The Denial of Guinn's Motion for Acquittal For Possession With Intent to Deliver Cocaine

At the conclusion of the State's evidence, Guinn moved for a judgment of

---

1. *Tricoche v. State*, 525 A.2d 151, 153 (Del. 1987).

2. *Id*, 525 A.2d at 152 (quoting *Whitfield v. State*, 524 A.2d 13, 16 (Del.1987)).

3. *See Tilghman v. State*, 734 A.2d 160, 1999 WL 486621 (Del.1999) (ORDER).

acquittal on the charge of Possession with Intent to Deliver Cocaine. The trial judge denied the motion. On appeal, Guinn claims that the denial of his motion was error. We review this claim *de novo*, to determine whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could have found the essential elements of possession with intent to deliver cocaine beyond a reasonable doubt.[4]

■ To prove the crime of possession with intent to deliver, the State must establish three elements beyond a reasonable doubt: (1) knowing possession (2) a narcotic Schedule II controlled substance, and (3) an intent to deliver. Guinn does not contest that the State established the first two elements. His challenge is limited to the claim that the State did not prove that he possessed the cocaine with intent to sell or deliver it. We disagree. In our view, the evidence would permit a rational trier of fact to find beyond a reasonable doubt that Guinn possessed the 2.45 gram rock of crack cocaine for purposes of sale, and not for personal consumption.

First, the quantity of the drug — 2.45 grams — was indicative of an intent to sell or deliver. The probation officer, Douglas Watts, testified that in his experience, crack cocaine users (as opposed to sellers) possess much smaller quantities, *e.g.*, 0.1 or 0.2 gram pieces. The single rock of cocaine found on Guinn was ten times that amount. Second, when the police searched Guinn, they found no device to facilitate personal consumption, such as a pipe, stem or other device to ingest the crack cocaine. Third, the fact that Guinn was found in possession of a small screwdriver was probative, because, as Officer Watts testified,

a screwdriver was the kind of instrument that crack cocaine dealers could use to break off smaller pieces of the drug for street sales of 0.1 or 0.2 grams. Fourth, the amount of cash ($424) found in Guinn's cargo pants far exceeded the amounts that an active crack cocaine user would be expected to possess in the high crime area of South New Street. As Officer Watts testified, active cocaine users have less money because of their drug habits. Officer Kuntzi testified that he would have expected to see only one or two $20 bills if Guinn were solely a cocaine user. In this case Guinn had six $20 bills, one $50 bill and one $100 bill; and in his years of experience, Officer Kuntzi had never encountered a crack cocaine user with a $100 bill.

Fifth, and finally, Guinn's contradictory and incongruous statements to the authorities when he was searched evidenced an intention to avoid any connection with either the cash or the drugs found in his pants. When he was taken into custody, Guinn initially claimed that the $424 cash belonged to his girlfriend. He later contradicted that statement and claimed that the money belonged to another male subject who had been walking down the street with him. Guinn also claimed that the pants he was wearing did not belong to him, but he never revealed the identity of the alleged true owner. A rational trier of fact could reasonably find Guinn's claim that he was wearing someone else's pants containing over $400 in cash, to be implausible.

Although there may be alternative explanations for each of these five incriminatory circumstances, the totality of that evidence would have permitted a rational jury, viewing the evidence in the light most favorable to the State, to find beyond a

4. *Seward v. State*, 723 A.2d 365, 369 (Del. 1999).

reasonable doubt that Guinn possessed the single crack cocaine rock with the intent to deliver that contraband. Accordingly, the trial court properly denied Guinn's motion for a judgment of acquittal.

*Conclusion*

For these reasons, the Superior Court's judgment of conviction is affirmed.