# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DANIEL WRIGHT,[1] | § | |
| | § | |
| Respondent Below-Appellant, | § | No. 467, 2016 |
| | § | |
| v. | § | Court Below—Family Court |
| | § | of the State of Delaware |
| ANNE EVANS-GRANT, | § | |
| | § | File No. CN07-06749 |
| Petitioner Below-Appellee. | § | Pet. No. 16-15876 |
| | § | |

Submitted: February 10, 2017
Decided: April 19, 2017

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

## ORDER

This 19th day of April 2017, upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) The appellant, Daniel Wright ("Father"), filed this appeal from the Family Court's decision granting a petition for a rule to show cause filed by the appellee, Ann Evans-Grant ("Mother"). On appeal, Father argues, among other things, that the Family Court erred by finding him in contempt and thus sanctioning him by awarding Mother the sole right to make decisions about aspects of their child's medical care and modifying the parties' custody schedule. We uphold the Family Court's contempt ruling,

---

[1] The Court previously assigned pseudonyms to the parties.

in part, and find no basis to reverse the Family Court's award of decision-making authority to Mother. However, on the record presented, we conclude that the Family Court erred by holding Father in contempt for his refusal to attend a joint therapy session with Mother and by modifying the parties' custody schedule as a sanction. Accordingly, we affirm in part and reverse in part.

(2) The record reflects that the parties are the parents of one son ("the Child"), born October 5, 2007. In March 2009, the parties filed a joint stipulation with the Family Court regarding their shared custody arrangements. In August 2010, the Family Court, after a hearing, granted Father's petition to modify custody to allow Father, among other things, to have the Child overnight on both Wednesdays and Thursdays each week plus every other weekend.

(3) Mother filed a petition for custody modification in 2014. In an order dated December 11, 2015 ("the December 2015 Order"), the Family Court, after a hearing and after considering the best interest factors of 13 *Del. C.* § 722(a),[2] determined that a change in the parties' custody schedule

---

[2] 13 *Del. C.* § 722(a) provides:

The Court shall determine the legal custody and residential arrangements for a child in accordance with the best interests of the child. In determining the best interests of the child, the Court shall consider all relevant factors including:

was not in the Child's best interests. However, the Family Court did order the following: (i) Mother and Father were directed to pursue nonbinding arbitration to resolve their differences over whether the Child should play football, given his history of at least one concussion; (ii) Father was directed to make an appointment with a doctor recommended by the Child's therapist in order to discuss the Child's ADHD diagnosis and whether he should take medication to treat his symptoms; and (iii) Father was directed to make the first monthly appointment with the Child's therapist and to alternate taking the Child to his therapy sessions.

(4)     In May 2016, Mother filed a petition for a rule to show cause. She alleged that Father had violated the December 2015 Order because he

---

1) The wishes of the child's parent or parents as to his or her custody and residential arrangements;

2) The wishes of the child as to his or her custodian or custodians and residential arrangements;

3) The interaction and interrelationship of the child with his or her parents, grandparents, siblings, persons cohabiting in the relationship of husband and wife with a parent of the child, any other residents of the household or persons who may significantly affect the child's best interests;

4) The child's adjustment to his or her home, school and community;

5) The mental and physical health of all individuals involved;

6) Past and present compliance by both parents with their rights and responsibilities to their child under § 701 of this title;

7) Evidence of domestic violence as provided for in Chapter 7A of this title; and

8) The criminal history of any party or any other resident of the household including whether the criminal history contains pleas of guilty or no contest or a conviction of a criminal offense.

3

had not met with the doctor to discuss the Child's need for ADHD medication. She also alleged that, although she and Father had agreed to arbitrate their dispute about the Child playing football, Father later refused to do so and unilaterally signed the Child up to play on a football team. Mother also alleged that Father had not taken the Child to several of his scheduled therapy appointments. She asked the Family Court to award her the sole right to make medical and extracurricular activity decisions for the Child.

(5) Father filed an answer to the petition. He asserted that he had called the doctor several times and left messages but only heard back from the nurse, who faxed information about ADHD to Father for his review. Father asserts that he believes the Child does not have ADHD and that the problem lies with the Child's teachers. Father also contended that he declined to arbitrate or mediate the issue of the Child playing football because, according to Father, the Child had never suffered a concussion and because Father is an experienced coach and has the right as a parent to select extracurricular activities for the Child. Finally, Father asserted that he had made up two of the three appointments that the Child had missed with his therapist.

4

(6)     The Family Court scheduled a hearing on Mother's petition for August 11, 2016. Two days before the hearing, Father called the Family Court and left a message with the "call center" that he would not be attending the hearing because of a work commitment. Father did not file a motion for continuance. The hearing occurred as scheduled. The Family Court judge attempted to call Father on his cell phone at the beginning of the hearing but only got his voicemail and left a message.

(7)     After considering Mother's testimony and evidence on the rule to show cause petition, the Family Court found Father in contempt of the December 2015 Order. Specifically, the court found that Father was in contempt because he failed to: (i) to meet with the doctor to discuss medication to treat the Child's ADHD; (ii) participate in nonbinding arbitration regarding the issue of football; and (iii) follow the therapist's recommendation that the parties meet jointly with her to discuss coparenting issues. As a consequence of Father's failure to meet with the doctor, the Family Court, among other things, granted Mother sole decision-making authority limited to the issue of medication to treat the Child's ADHD.[3] The Family Court also granted Mother sole authority to consent to the Child's

---

[3] Although the Family Court found Father in contempt for failing to participate in non-binding arbitration regarding football, the court specifically stated that no separate sanction was imposed for that violation.

Individualized Education Plan. As a consequence of his failure to meet jointly with Mother and the Child's therapist, the Family Court ordered Father's custodial contact to be reduced from two overnights per week to one overnight per week. Father did not move to reargue or reopen the Family Court's judgment but, instead, filed this appeal.

(8) Father identifies seven issues in his opening brief on appeal. First, he contends that a joint meeting between Father, Mother, and the Child's therapist was *not* ordered by the Family Court in the December 2015 Order and, therefore, he was not in contempt for refusing to participate. Second, he argues that the Family Court erred in modifying custody as a sanction because Mother had not requested such relief in her rule to show cause petition. Third, Father contends that the Family Court erred in allowing Mother to discontinue paying for child care that she does not require (and making Father pay for child care that he does require) without reducing Father's child support obligations. Fourth, he contends the Family Court erred in requiring him to be responsible for transporting the Child to alternate therapy sessions when Mother has work flexibility that Father does not have, and Father does not believe therapy is needed. Fifth, he contends that the Family Court erred in allowing Mother to decide where the Child attends school. Sixth, he contends that the Family Court erred in allowing

6

Mother sole decision-making authority about the Child's ADHD medication. Seventh, Father asserts that Mother has refused to bring the Child to sports practices.

(9) With respect to Father's arguments regarding his child support obligations, transportation of the Child to therapy, the Child's schooling, and Mother's refusal to bring the Child to sports practices, the Court cannot review his arguments because he failed to appear at the hearing and present his arguments to the Family Court in the first instance,[4] and much of the evidence he now offers is outside of the record on appeal.[5] Moreover, in his answer to Mother's petition, Father acknowledged that he had neither met with the doctor to discuss ADHD medication for the Child nor participated in arbitration about football as required by the December 2015 Order. Given Father's failure to order a copy of a transcript of the contempt hearing, we have no basis to overturn the Family Court's judgment finding him in contempt of those two aspects of the December 2015 Order and awarding

---

[4] Del. Supr. Ct. R. 8.

[5] *See* Del. Supr. Ct. R. 9; *Delaware Elec. Co-op., Inc. v. Duphily*, 703 A.2d 1202, 1207 (Del. 1997) (holding that materials not offered into evidence and considered by the trial court are not part of the record on appeal).

Mother sole discretion to decide the medication issue.[6] We thus affirm these aspects of the Family Court's judgment.

(10) But, we agree with Father that the Family Court erred in modifying the parties' custody schedule as a sanction for Father's refusal to participate in joint counseling with Mother and the Child's therapist. Although the December 2015 Order required Father to schedule the Child's first appointment with the therapist, the Order did not mandate joint counseling. Nor did the December 2015 Order mandate that the parties abide by all of the counselor's recommendations. Under the circumstances, Father's failure to participate in the therapist's recommended joint counseling was not a violation of the Family Court's December 2015 Order.

(11) Moreover, Mother's rule to show cause petition did not request a change in the parties' custodial arrangements. Thus, Father had no notice that a modification of custody would be presented as an issue at the hearing scheduled to consider Mother's contempt petition. Procedural due process requires that parties whose rights are affected be given meaningful notice and an opportunity to be heard.[7] The defective notice given to Father about

---

[6] *Mahan v. Mahan*, 2007 WL 1850905 (Del. June 28, 2007) (*citing Tricoche v. State*, 525 A.2d 151, 154 (Del. 1987)).

[7] *Tsipouras v. Tsipouras*, 677 A.2d 493, 496 (Del. 1996).

the scheduled hearing is an independent legal basis to reverse that portion of the Family Court's judgment modifying custody.[8]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED in part and REVERSED in part. The matter is REMANDED to the Family Court to reinstate the parties' prior custody schedule. Jurisdiction is not retained.

BY THE COURT:

_James T. Vaughn_
Justice

---

[8] *Hammond v. Douglas*, 2010 WL 1694792, *2 (Del. Apr. 28, 2010).

9