IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CANDICE MCCONAUGHEY,[1] | § | |
| | § | No. 276, 2018 |
| Petitioner Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. CK12-03234 |
| MICHAEL WOLFE, | § | Petition Nos. 17-08034, |
| | § | 17-06600, 17-22646 |
| Respondent Below, | § | |
| Appellee. | § | |

Submitted: December 14, 2018
Decided: February 11, 2019

Before **STRINE**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

## **ORDER**

After consideration of the opening brief and the record on appeal, it appears to the Court that:

(1)    The appellant, Candice McConaughey ("the Mother"), filed this appeal from a Family Court decision and order, dated April 24, 2018, ruling on her petition to modify custody and competing petitions for a rule to show cause. We find no error or abuse of discretion in the Family Court's decision. Accordingly, we affirm the Family Court's judgment.

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

(2) The Mother and Michael Wolfe ("the Father") are the parents of a son born in October 2012 ("the Child"). Under the permanent custody order entered with the parties' consent on January 16, 2014, the Mother and the Father shared joint legal custody of the Child. The Child lived primarily with the Mother, with the Father having visitation every weekend from Saturday morning until Monday morning, plus two three-hour visits each week. If the Mother could not provide transportation, the Father was to provide transportation.

(3) On March 6, 2017, the Father filed a petition for a rule to show cause, alleging that the Mother often failed to drop the Child off for visits or pick him up. He sought full residential placement of the Child. On March 9, 2017, the Mother filed a petition for modification of custody, alleging that the Father had no physical address, was not consistently picking the Child up twice a week for three-hour visits, and was picking up and dropping off the Child at his own convenience. On July 26, 2017, the Mother filed a petition for a rule to show cause, making allegations similar to those in her petition for modification of custody. The Mother filed a petition for priority scheduling, which the Family Court denied.

(4) The Mother filed a motion for an emergency ex parte order reducing the Father's visitation. The Family Court denied the motion, finding the Mother did not establish a risk of immediate, irreparable harm. The Family Court reminded the parties to comply with the existing court order. On August 18, 2017, the Family

2

Court held a case management conference on the parties' petitions. On August 25, 2017, the Family Court issued an order documenting the case management conference, scheduling a hearing on the petitions for January 25, 2018, and establishing pre-hearing deadlines and procedures.

(5) At the January 25, 2018 hearing, the Family Court heard testimony from the Mother, her uncle, and the Father. The Family Court reserved decision and gave the Mother additional time to submit into evidence text messages she exchanged with the Father. In its April 24, 2018 decision, the Family Court concluded that the parties should continue to have joint legal custody and the Child should continue to reside primarily with the Mother during the school year (with the Father having the Child on weekends), but the Father should have increased visitation with the Child in the summer (every other week).

(6) As to the rules to show cause, the Family Court denied the Mother's petition. The Family Court found that the Mother had not shown the Father violated the custody order. The Family Court granted the Father's petition. The Family Court found that the Mother violated the custody order by conditioning the Father's visits on additional changes to the locations and times of exchanges (the custody order provided for exchange to occur at the Mother's residence, but the Father had agreed when the Mother changed the exchange location) and cancelling one of the Father's weekend visits because she was displeased with him. This appeal followed.

3

(7)     This Court's review of a Family Court decision includes a review of both the law and the facts.[2]  Conclusions of law are reviewed *de novo*.[3]  Factual findings will not be disturbed on appeal unless they are clearly erroneous and justice required they be overturned on appeal.[4]  When the determination of facts turns on a question of the credibility and the acceptance or rejection of the testimony of witnesses appearing before the trier of fact, we will not substitute our opinion for that of the trier of fact.[5]

(8)     The Mother's arguments on appeal may be summarized as follows: (i) the Family Court misstated certain facts, including the date of the custody order, the Father's remarriage, and the Mother's profession and employer; (ii) the Family Court was biased and relied on hearsay; (iii) the Family Court ignored things the Mother raised at the hearing; (iv) the whole purpose of the Mother's petition was to modify the custody order in light of her work schedule, but that was not discussed at the hearing; (v) the Family Court allowed the Father to introduce text messages he exchanged with the Mother over the Mother's objection that he had not provided that evidence to her before the hearing as required by the case management order;

---

[2] *Mundy v. Devon,* 906 A.2d 750, 752 (Del. 2006).
[3] *Id.*
[4] *Id.*
[5] *Wife (J.F.V.) v. Husband (O.W.V, Jr.)*, 402 A.2d 1202, 1204 (Del.1979).

4

and (vi) the exchange times and locations in the order do not reflect the parties' preferences.

(9) Although the Mother had the burden of supplying a transcript of the January 25, 2018 hearing,[6] she chose not to obtain one after the Family Court denied her motion to waive the transcript fee. A civil litigant does not have an absolute right to obtain a copy of a transcript at State expense.[7] In the absence of a transcript, the Court lacks an adequate basis for evaluating most of the Mother's claims on appeal.[8] The Mother claims that the Family Court ignored the whole purpose of her custody petition (to modify the visitation schedule in light of her work schedule), but the petition does not mention her work schedule. As to the text messages, the Family Court gave the Mother the opportunity to submit her text messages with the Father after the hearing and considered those messages.

(10) Under Delaware law, the Family Court is required to determine legal custody and residential arrangements for a child in accordance with the best interests

---

[6] Supr. Ct. R. 9(e)(ii); Supr. Ct. R. 14(e); *Tricoche v. Stale*, 525 A.2d 151, 154 (Del. 1987).

[7] *Mahan v. Mahan*, 2007 WL 1850905, at *1 (Del. June 28, 2007).

[8] *See, e.g., Baines v. Hunter*, 2018 WL 2316541, at *1 (Del. May 22, 2018) ("To the extent the respondent/petitioner below-appellant claims that the Family Court disregarded the evidence he offered or disputes the Family Court's factual findings, we cannot review those claims in the absence of a transcript of the [] rule to show cause hearing."); *Drake v. Orlando*, 2017 WL 1409578, at *2 (Del. Apr. 19, 2017) ("In the absence of a transcript of the custody hearing, this Court lacks an adequate basis for evaluating the Father's claims that the Family Court failed to consider certain evidence.").

5

of the child.[9]  The April 24, 2018 decision reflects that the Family Court carefully considered all of the best interest factors under 13 *Del. C.* § 722 and determined that it was in the best interests of the Child to increase his visitation with the Father.  We find no basis to disturb the Family Court's custody rulings.  We also find no basis to disturb the Family Court's rulings on the rule to show cause petitions.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice

---

[9] The best interest factors include: (i) the wishes of the parents regarding the child's custody and residential arrangements; (ii) the wishes of the child regarding her custodians and residential arrangements; (iii) the interaction and interrelationship of the child with her parents, grandparents, siblings, persons cohabiting in the relationship of husband and wife with a parent of the child, and any other residents of the household or persons who may significantly affect the child's best interests; (iv) the child's adjustment to her home, school, and community; (v) the mental and physical health of all individuals involved; (vi) past and present compliance by both parents with their rights and responsibilities to the child under 13 *Del. C.* § 701; (vii) evidence of domestic violence; and (viii) the criminal history of any party or any resident of the household.  13 *Del. C.* § 722.