IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| SARA MALONE,[1] | § |
| | § No. 425, 2019 |
| Petitioner-Below, | § |
| Appellant, | § Court Below—Family Court |
| | § of the State of Delaware |
| v. | § |
| | § File No. CN14-06313 |
| TERRY BUTLER, | § Petition No. 19-01579 |
| | § |
| Respondent-Below, | § |
| Appellee. | § |

Submitted: April 3, 2020
Decided: June 9, 2020

Before **SEITZ**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

## **ORDER**

After consideration of the opening brief and the record on appeal, it appears to the Court that:

(1)    The appellant, Sara Malone ("the Mother"), filed this appeal from a Family Court order denying her petition for sole custody. For the reasons discussed below, we affirm the Family Court's judgment.

(2)    The Mother and the appellee, Terry Butler ("the Father"), are the parents of a child born in 2014 ("the Child"). The Child lived with the Mother. In January 2019, the Mother filed a petition for sole custody of the Child. The Father

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

opposed the petition and requested visitation. On May 21, 2019, the Family Court entered an interim order providing that the Child would primarily reside with the Mother and that the Father would have visitation twice a week at the Visitation Center.

(3) On July 8, 2019, the Family Court held a hearing on the Mother's petition. The parents, maternal grandmother, paternal uncle, the Mother's friend, and the Father's friend testified. On September 5, 2019, the Family Court issued its decision. Because the parties agreed that the Mother should have primary residential placement of the Child, the Family Court focused on custody and visitation. After weighing the best-interest factors under 13 *Del. C.* § 722, the Family Court concluded that it was in the Child's best interest for the parties to have joint custody and to limit the Father's visitation with the Child to one, weekly two-hour visit at the Visitation Center until he provided a copy of his Pennsylvania criminal history. This appeal followed.

(4) This Court's review of a Family Court decision includes a review of both the law and the facts.[2] Conclusions of law are reviewed *de novo*.[3] The Family Court's factual findings will not be disturbed on appeal if they are supported by the record and are the product of an orderly and logical deductive process.[4] Under

---

[2] *Mundy v. Devon,* 906 A.2d 750, 752 (Del. 2006).
[3] *Id.*
[4] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

Delaware law, the Family Court must determine legal custody and residential arrangements for a child in accordance with the best interests of the child. The criteria for determining the best interests of a child are set forth in 13 *Del. C.* § 722.[5]

(5) On appeal, the Mother argues that the Family Court erred in finding joint custody was in the best interests of the Child because the Father failed to: (i) pay child support; (ii) visit the Child; (iii) provide evidence of stable housing and income; and (iv) provide a copy of his Pennsylvania criminal history.

(6) In addressing the sixth best-interest factor (the parties' past and present compliance with their rights and obligations to the child), the Family Court noted that a child support order was in place and assumed that the Father was paying child support because there was no testimony indicating otherwise. The Mother argues that the Father has not in fact paid child support. To the extent the Mother is contending that the Family Court disregarded testimony at the hearing that the Father had failed to pay child support, we cannot review this claim in the absence of a

---

[5] The best-interest factors include: (i) the wishes of the parents regarding the child's custody and residential arrangements; (ii) the wishes of the child regarding his custodians and residential arrangements; (iii) the interaction and interrelationship of the child with his parents, grandparents, siblings, persons cohabitating in the relationship of husband and wife with a parent of the child, and any other residents of the household or persons who may significantly affect the child's best interests; (iv) the child's adjustment to his home, school, and community; (v) the mental and physical health of all individuals involved; (vi) past and present compliance by both parents with their rights and responsibilities to the child under 13 *Del. C.* § 701; (vii) evidence of domestic violence; and (viii) the criminal history of any party or any resident of the household. 13 *Del. C.* § 722.

transcript of the July 8, 2019 hearing.[6]  As the appellant, the Mother had the burden

of supplying a transcript of the July 8, 2019 hearing,[7] but she chose not to obtain one

after the Family Court denied her motion to waive the transcript fee.  A civil litigant

does not have an absolute right to obtain a copy of a transcript at State expense.[8]  To

the extent that the Mother is raising the Father's failure to pay child support for the

first time on appeal, we cannot consider that claim.[9]

(7)    The Mother next argues that the Father should not have joint custody

because he failed to visit the Child.  The Mother also argues that the Father has not

regularly visited the Child since the Family Court's decision, but this evidence was

not presented to the Family Court in the first instance, is outside of the record on

appeal, and cannot properly be considered by this Court.[10]  In addressing the third

---

[6] *See, e.g., Baines v. Hunter*, 2018 WL 2316541, at *1 (Del. May 22, 2018) ("To the extent the respondent/petitioner below-appellant claims that the Family Court disregarded the evidence he offered or disputes the Family Court's factual findings, we cannot review those claims in the absence of a transcript of the November 7, 2017 rule to show cause hearing."); *Drake v. Orlando*, 2017 WL 1409578, at *2 (Del. Apr. 19, 2017) ("In the absence of a transcript of the custody hearing, this Court lacks an adequate basis for evaluating the Father's claims that the Family Court failed to consider certain evidence.").

[7] Supr. Ct. R. 9(e)(ii); Supr. Ct. R. 14(e); *Tricoche v. State*, 525 A.2d 151, 154 (Del. 1987).

[8] *Mahan v. Mahan*, 2007 WL 1850905, at *1 (Del. June 28, 2007).

[9] Supr. Ct. R. 8.

[10] *See Price v. Boulden*, 2014 WL 3566030, at *2 (Del. July 14, 2014) (declining to consider a parent's representation concerning her purchase of appropriate housing after the decision on appeal); *Del. Elec. Coop., Inc. v.  Duphily*, 703 A.2d 1202, 1206 (Del. 1997) ("It is a basic tenet of appellate practice that an appellate court reviews only matters considered in the first instance by a trial court.").  We note that the Family Court may modify a custody order on an application made within two years of the most recent order if the Family Court finds, after a hearing, that continuing enforcement of the existing order may endanger the child's physical health or significantly impair the child's emotional development. 13 *Del. C.* § 729(c)(1). If the application for modification is made more than two years after the Family Court's most recent order, the Family Court may modify custody after considering whether modification would harm the child,

4

best-interest factor (a child's interaction and relationship with her parents, relatives, and other household members), the Family Court considered the Father's limited contact with the Child. The parents blamed each other for this lack of contact, with the Father claiming that the Mother had prevented him from seeing the Child. The Family Court noted that the Father could have pursued his parental rights sooner, but also found it more likely than not that the Mother was inhibiting the Father's contact with the Child in recent months.

(8) The Family Court found that this best-interest factor weighed in favor of granting the Mother sole custody, but that the other factors were neutral or of little weight and that the fifth best-interest factor (the mental and physical of the individuals involved) weighed in favor of joint custody. The Family Court may give different weight to different factors in balancing the best-interest factors.[11] In concluding that joint custody was in the best interests of the Child, the Family Court also noted the parents' status as joint natural guardians of their children under § 701(a), the lack of evidence to support restriction of the Father's right to participate in making decisions for the Child at the time, and both parents' contribution to their poor relationship. We cannot find that the Family Court's consideration of the

---

the parents' compliance with previous court orders and their duties under § 727, and the best-interest factors under § 722. 13 *Del. C.* § 729(c)(2).

[11] *Powell v. Dep't of Servs. Children, Youth & Their Families*, 963 A.2d 724, 736 (Del. 2008).

5

Father's lack of contact with the Child, which the Family Court partially attributed to the Mother, was an abuse of discretion.

(9) The Mother next argues that the Father lied to the Family Court about his housing and income. She also states that he is presently homeless, but we do not consider this claim.[12] In making its decision, the Family Court described the Father's testimony that he lived in an apartment that was in his grandmother's name in Philadelphia. The Father also testified about the wages he earned caring for his grandmother. When the determination of facts turns on a question of the credibility and the acceptance or rejection of the testimony of witnesses appearing before the trier of fact, as it does here, we will not substitute our opinion for the trier of fact.[13]

(10) Finally, the Mother argues that she should have sole custody because the Father failed to provide a copy of his Pennsylvania criminal history. In considering the eighth best-interest factor (the parties' criminal histories), the Family Court had no concerns about the Mother's criminal history. The Family Court noted that the Father had drug possession convictions in Delaware before the Child's birth. The Father testified that he did not have a criminal history in Pennsylvania, but failed to provide a certified copy of his Pennsylvania criminal history as the Family Court had previously ordered him to do. Based on the Father's failure to provide a certified

---

[12] *See supra* n.10.
[13] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

copy of his Pennsylvania criminal history, the Family Court found that the eighth-best interest factor supported supervised visitation as requested by the Mother, but accorded this factor little weight as to custody. The Family Court may, as previously discussed, give different weight to different factors in balancing the best-interest factors.[14] We cannot find that the Family Court abused its discretion in giving this factor more weight in its consideration of visitation than in its consideration of custody.

(11) Having carefully reviewed the opening brief and the record on appeal, we find no error abuse or abuse of discretion in the Family Court's decision. The Family Court correctly applied the law and considered the best-interest factors under 13 *Del. C.* § 722. We therefore affirm the Family Court's judgment.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice

---

[14] *See supra* n.13

7