Marcus F. TAYLOR, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 228,2002.

Supreme Court of Delaware.

Submitted: Nov. 19, 2002.
Decided: April 3, 2003.

Paul S. Swierzbinski, Assistant Public
Defender, Office of the Public Defender,
Dover, for Appellant.

John Williams, Deputy Attorney General, Department of Justice, Dover, for Appellee.

Before WALSH, HOLLAND, and BERGER, Justices.

WALSH, Justice:

In this appeal from the Superior Court, we again address a claim of prosecutorial misconduct occurring during summation to a jury. We conclude that the prosecutor's "concession" to the jury that the State "probably" had not provided sufficient evidence to establish four of the eight theft charges submitted to the jury constituted an admission that the State had not presented a *prima facie* case as to those charges. In view of that concession, the appropriate course was to decline further prosecution of those charges. We further conclude that it was error for the trial judge to permit these charges to be submitted to the jury for deliberation after the State made its concession. Although the jury eventually acquitted the defendant of the four "conceded" offenses, we cannot conclude that the State's tactic did not influence the jury's verdict as to the remaining offenses. Since the conduct of the prosecutor and ruling of the trial judge created prejudicial error the convictions cannot stand. Accordingly, we reverse and order a new trial.

## I

The evidence presented at trial showed the following events. The defendant, Marcus Taylor ("Taylor"), was the general manager of one of three McDonald's restaurants owned and operated by Robert Cocozzoli ("Cocozzoli") in the Dover area. One of Taylor's duties, shared with two assistant managers, was to collect cash receipts during each of two shifts and deposit those receipts in a local bank. The bank would count the money and stamp the deposit tickets to verify its accuracy. The stamped deposit tickets, when returned to the restaurant, would be compared to the computerized entry of receipts for the shift corresponding to the deposit ticket. The verification was performed by the two managers and Taylor, each of whom had separate codes for accessing the computer program.

During the period from January 1 to January 18, 2001 Cocozzoli was notified by the bank that deposits were insufficient to meet checks drawn against the account. Further inquiry indicated that, apparently, deposits were reflected in the computer program even though the bank had not verified their receipt. At some point, Cocozzoli confronted Taylor about the missing deposits and Taylor admitted that he had not made some of the deposits, that they were still in his car and that he would immediately take them to the bank. Eventually, Cocozzoli determined that four deposits for January 5, 6, 9, and 12 of 2001, had reached the bank but after their validation on the computer program. Four other deposits, for January 15, 16, 17, and 18 of 2001 were never found or validated and the bank had no record of their receipt.

Taylor was indicted on eight counts of felony theft—representing the eight deposits in question. Four of the counts (Counts 1 through 4) reflect amounts that were, in fact, delivered to the bank but several days after their verification on the store computer. The remaining four counts (Counts 5 through 8) reflects amounts that were never received by the bank. At trial, Cocozzoli testified that he never gave Taylor permission to keep any of the restaurant's funds. Taylor elected not to testify in his defense.

## II

At the conclusion of its case, the State had presented evidence from which the

jury could conclude that the deposits representing Counts 5 through 8 had not been accounted for and that Taylor was the person responsible for the safekeeping. As to the other four deposits, the evidence was clear that they had in fact been accounted for, albeit in an untimely fashion.

In his summation to the jury, the prosecutor, anticipating the argument of defense counsel that the late deposits could not be the subject of theft because there was no intent to permanently appropriate them, suggested that perhaps an argument could be made that those deposits could support a theft charge. The prosecution then conceded that such a contention was not probable in the following statement:

> But in all honesty, since money is interchangeable, the correct answer is that there's probably not enough to demonstrate an intent to appropriate on those first four because they eventually showed up. He was arrested for eight counts, and he was, you know, charged with eight counts. But in all honesty, Mr. Swierzbinski's argument probably does make sense, the first four deposits, and you probably can't conclude beyond a reasonable doubt that there was an intent to appropriate the first four.

> They showed what he was doing. They are part of what was going on. Part of the evidence, the first four counts, since they eventually showed up in the bank, you probably can't say beyond a reasonable doubt that there was an intent to appropriate them. These last four that never showed up, clearly was with an intent to appropriate because they just vanished. They walked out of the store at the same time just before the defendant did, and they were never seen again.

> So, the intent to appropriate is clear: The money was taken with intent to keep it and it never came back. So, in viewing all the evidence and thinking about it, and thinking about the legal standards explained by the Judge, the State would ask you to examine all of it to see what the defendant was doing. And the State submits, beyond a reasonable doubt, that—the State would assert that this money, which is the only money of these last four deposits, are permanently missing. It's 9,000 some dollars.

> We ask that you convict the defendant of those four counts of felony theft. Ask yourselves whether it makes sense to think anybody other than him, based on this evidence, took that money? The State would submit to you that he did, and I would ask you to convict.

At the conclusion of the State's summation, defense counsel, out of the presence of the jury, requested the trial judge to grant a "judgment of acquittal" as to Counts 1 through 4 since "[t]he State told the jury, at least twice, if not more than that, that there probably is a reasonable doubt as to Counts 1 through 4." Defense counsel further requested a mistrial as to the remaining Counts 5 through 8, because the State "used or attempted to use Counts 1 through 4 to a tactical advantage to help bootstrap its case on Counts 5 through 8. That's not appropriate." Defense counsel further contended that the State used the evidence supporting Counts 1 through 4, despite the absence of *prima facie* evidence of theft, to show "false validation," a form of bad act evidence, to support its case as to the remaining counts.

Before ruling on the defense motions for acquittal and mistrial, the trial judge asked the prosecutor to explain the State's position in view of the unusual concession made in summation. The prosecutor replied that: "the State simply took the position that the reason the jury probably should not convict on Counts 1 through 4,

but that doesn't mean that a reasonable jury could not do so." When the trial judge indicated that it did not "understand" the State's position the prosecutor gave the following explanation:

[PROSECUTOR]: And the State's view, the legal standard for that is not met. Although, based on my comments, I would expect the jury probably to acquit on those counts. And that does make sense, but that's simply assessing the inferences, and the equities of the way that they appear to me. I think a reasonable, rational jury could convict on them. But again, it is true that I asked the jury or said to the jury that it was difficult to argue that they could find beyond a reasonable doubt that there was an intent to appropriate. So I expect the jury will acquit on those, in any event.

The trial judge although acknowledging that it was "quite chancey for the State to argue this way" and that the State's concession had given the defense "a live cannon for its closing argument," found no impropriety in the prosecutor's tactics and denied the defense motions for acquittal as to Counts 1 through 4 and a mistrial as to the remaining counts. The jury ultimately acquitted the defendant of Counts 1 through 4 but convicted him of the remaining counts.

### III

■ Our standard of review, for a trial court's denial of a motion for mistrial is one of abuse of discretion. *Ashley v. State*, 798 A.2d 1019, 1022 (Del.2002). Where, however, the underlying basis for the mistrial motion is prompted by prosecutorial misconduct or overreaching, our review necessarily includes an analysis of whether the conduct of counsel compromised the defendant's entitlement to "a fair trial which is implicit in the Due Pro-

cess Clause of the Fourteenth Amendment by which the states are bound." *Bailey v. State*, 440 A.2d 997, 1003 (1982).

More than forty years ago this Court commented upon the prosecutor's unique position within the criminal justice system and emphasized the dual obligation to present the State's case "with earnestness and vigor" while discharging "his duty to see that justice be done by giving defendant a fair and impartial trial." *Bennett v. State*, 164 A.2d 442, 446 (Del.1960). We have since repeated this admonition and in particular applied that dual obligation to the propriety of the content of closing argument. *See Hooks v. State*, 416 A.2d 189, 204–208 (Del.1980) (prosecutor's inflammatory comments in summation were clearly improper but cured by trial court's lengthy admonishment to the jury); *Hughes v. State*, 437 A.2d 559, 571–572 (Del.1981) (applying three-part test for determining prejudice and holding that prosecutor's remarks were so clearly prejudicial as to affect substantial rights). More recently, this Court criticized a prosecutor for disparaging the reasonable doubt standard and noted a repeated pattern of prosecution misconduct in summation that compromises "the integrity of the judicial process." *Hunter v. State*, 815 A.2d 730 (Del.2002).

■ The present case differs from previous instances where this Court has criticized the context of summations by prosecutors. Unlike several of our previous cases, the prosecutor here did not engage in disparagement of the defendant nor did he directly misstate the evidence. Indeed, in a sense, the prosecutor exercised unusual candor in conceding the weakness of his own case. Nonetheless, the prosecutor's comments are problematic because they reflect on the fairness implicit in the prosecutorial role as it relates to the function of the jury. The *ABA Standards for*

*Criminal Justice,* to which this Court looks for guidance, sets the general tone:

> The prosecutor's argument is likely to have significant persuasive force with the jury. Accordingly, the scope of the argument must be consistent with the evidence and marked by the fairness that should characterize all of the prosecutor's conduct. Professional conduct in argument is a matter of special concern because of the possibility that the jury will give special weight to the prosecutor's arguments, not only because of the prestige associated with the prosecutor's office, but also because of the fact finding facilities presumably available to the office.

Commentary, ABA Standards for Criminal Justice, *The Prosecution Function* §§ 2–5.8 (3d ed.1993).

Here, the prosecutor's argument conveyed to the jury his belief that there was a basis in the evidence for conviction on Counts 1 through 4 while conceding that the jury "probably can't say beyond a reasonable doubt that there was an intent to appropriate [the funds alleged in Counts 1 through 4]." Such an argument is not only disingenuous, it represents an abuse of the prosecutor's charging responsibility. Section 3.9(a) of the *ABA Standards for Criminal Justice* provides that "[i]t is unprofessional conduct for a prosecutor to institute or cause to be instituted criminal charges when he knows that the charges are not supported by probable cause." ABA Standards for Criminal Justice, *The Prosecution Function* § 3.9(a). The prosecutor's obligation not to institute criminal charges not supported by probable cause is a continuing one and extends to the pursuit of charges at trial when the evidence fails to support probable cause. Here the prosecutor had a duty not to pursue such charges when he was convinced, as he conceded to the jury, that acquittal was probable, and not simply the possible result of exercising reasonable doubt.

■ The prosecutor's conduct was compounded by the failure of the trial judge to take corrective action to ameliorate the prejudice. Defense counsel made a prompt and pointed objection to the prosecutor's summation and thus we do not view this claim under a plain error standard. In view of the State's concession that the jury would "probably acquit" on Counts 1 through 4, the trial judge was required to enter a judgment of acquittal since "the evidence is insufficient to sustain a conviction," as required by *Super. Ct. Cr. R.* 29(a). The rule permits the judgment of acquittal be entered by the court on motion of the defendant or on "its own motion." The State's concession required the Superior Court to grant a judgment of acquittal[1] as to Counts 1 through 4 and the failure to do so was error.

The State contends that in view of the jury's acquittal of the charges, conceded by the State to be weak, the guilty verdict on the remaining charges should be tested by the usual standard of whether a rational trier of fact, viewing the evidence in the light most favorable to the State, could have found the essential element of felony theft. *Seward v. State,* 723 A.2d 365, 369 (Del.1999). This argument overlooks the potential for prejudice that arises whenever a jury is permitted to deliberate guilt on multiple offenses, some of which should

---

1. To the extent the prosecutor's statements to the jury related to factual issues, *i.e.,* the strength of the State's case, as distinct from a legal theory, they could constitute judicial admission which bind the State. *Levinson v.*

*Delaware Compensation Rating Bureau, Inc.,* 616 A.2d 1182, 1186 (Del.1992) (*quoting Blinder, Robinson & Co., Inc. v. Bruton,* 552 A.2d 466, 474 (1989)).

not have been submitted for jury determination in the first place. As the defendant argued in the Superior Court and repeats here, the presence of unsupported charges permits the State to bootstrap its argument of guilt on the supportable charges by (a) pointing to other acts of possible misconduct and (b) facilitating a compromise verdict. In either event, we cannot state with confidence that the presence of the unsupported charges played no role in the jury's verdict. Under the circumstances, it was an abuse of discretion for the Superior Court not to declare a mistrial once it determined not to grant a judgment of acquittal on Counts 1 through 4.

The judgment of conviction is REVERSED and the matter REMANDED to the Superior Court for a new trial consistent with this decision.[2]

---

**2.** Our decision granting a new trial renders moot the defendant's contention that the Superior Court erred in refusing to perform the analysis required by *Getz v. State,* 538 A.2d 726 (Del.1988), to the extent the conduct underlying Counts 1 through 4 could be deemed bad acts, even if subject to a judgment of acquittal.