**Michael A. HENDRICKS, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 505,2004.

Supreme Court of Delaware.

Submitted: Feb. 23, 2005.
Decided: April 21, 2005.

---

**52.**  *Id.* at 867.

**53.**  Supr. Ct. R. 4(f).

Sandra W. Dean, Esquire, Office of the Public Defender, Dover, Delaware, for appellant.

John Williams, Esquire, Department of Justice, Dover, Delaware, for appellee.

Before HOLLAND, BERGER and JACOBS, Justices.

HOLLAND, Justice.

The defendant-appellant, Michael Hendricks, appeals from six final judgments, entered as a result of his convictions for various drug-related criminal offenses. Hendricks was convicted following a jury trial in the Superior Court. This is Hendricks' direct appeal.

Hendricks asserts three issues on appeal. First, Hendricks argues that the Superior Court erred in admitting evidence that Hendricks contends was not properly authenticated. Second, Hendricks claims that he was improperly denied a mistrial because a State's witness testified about having found court documents bearing Hendricks' name in the course of a search. Third, Hendricks contends that he was entitled to a "missing evidence" instruction because the police destroyed evidence before his trial. We have concluded that Hendricks' arguments are without merit. Therefore, the judgments of the Superior Court must be affirmed.

### Facts

Between 1997 and 1998, the Delaware State Police used a confidential informant to arrange controlled cocaine "buys" from Hendricks. An undercover officer, Detective David Wainwright,[1] purchased cocaine from Hendricks on December 23, 1997, April 20, 1998 and June 16, 1998. Based upon those purchases, the police obtained and executed arrest warrants for Hendricks.

1. For purposes of this opinion, a pseudonym is being used for the undercover detective.

When Hendricks was arrested, the police found $651 cash in his pocket, along with a key to a nearby hotel room. Hendricks consented to a police search of the hotel room. During that search, the police found a digital scale, sandwich-size plastic bags, and paperwork bearing Hendricks' name.

On October 3, 2000, the State rested its case against Hendricks. Hendricks did not return to the courtroom after the luncheon recess. Thereafter, the trial judge made a factual determination that Hendricks was voluntarily absent. The trial then proceeded to closing arguments, jury instructions, and jury deliberations. The jury convicted Hendricks of the following crimes: three counts of Delivery of a Narcotic Schedule II Controlled Substance,[2] two counts of Maintaining a Vehicle for Keeping Controlled Substances,[3] and one count of Possession of Drug Paraphernalia.[4]

On September 17, 2004, Hendricks was arrested on a *capias* warrant. Hendricks was sentenced for his six drug convictions on November 10, 2004. He filed a timely direct appeal with this Court.

### Cocaine Properly Admitted

Hendricks first argues that the Superior Court erred in admitting into evidence the cocaine that Delaware State Police undercover Detective David Wainwright purchased from Hendricks in June 1998. Hendricks contends that the State did not sufficiently establish the cocaine's chain of custody because the evidence tag had been altered before trial. The record reflects that the State established a sufficient chain of custody to permit the admission of the cocaine into evidence.

The State introduced the cocaine Detective Wainwright had purchased from Hendricks, during Detective Wainwright's testimony. During his direct examination, Detective Wainwright testified that according to the evidence tag, he collected the cocaine at 16:58 (military time) on June 16, and that he placed it in the evidence locker at 18:00 (military time) that same day. During his cross-examination, Detective Wainwright acknowledged that he had scratched out and rewritten the time that the cocaine was placed in the evidence locker. On his redirect examination, Detective Wainwright explained that because his handwriting on the original tag was unclear, he scratched out and rewrote the number 8 in "18:00" to make it clearer. To corroborate this testimony, Detective Wainwright explained that his police report "state[d] on 6/16/1998 at approximately 1800 hours I responded back, field tested, weighed and logged in the crack cocaine that was purchased during this investigation."

■ Pursuant to D.R.E. 901(a), a party offering an item into evidence bears the burden of proving that the item in question is what the proponent claims it to be. It is within the discretion of the trial judge to decide whether evidence has been properly authenticated.[5] The State may authenticate physical evidence in two ways. The State "may have witnesses visually identify the item as that which was actually involved with the crime, or it may establish a 'chain of custody,' which indirectly establishes the identity and integrity of the

---

2. Del.Code Ann. tit. 16, § 4751.

3. Del.Code Ann. tit. 16, § 4755(a)(5).

4. Del.Code Ann. tit. 16, § 4771. The jury acquitted Hendricks of a seventh charge, the count of Maintaining a Dwelling for Keeping

a Controlled Substance. Del.Code Ann. tit. 16, § 4755(a)(5).

5. *Demby v. State*, 695 A.2d 1127, 1133 (Del. 1997); *Ciccaglione v. State*, 474 A.2d 126, 130 (Del.1984).

evidence by tracing its continuous whereabouts." [6]

■ Generally, it is within the trial judge's discretion whether to admit evidence in particular circumstances.[7] When presented with a challenge to the chain of custody of an item of evidence, the trial judge should examine "whether there is a reasonable probability that the evidence offered has been properly identified and that no adulteration or tampering has occurred."[8] The State must prove the "reasonable probability of each proposition."[9]

■ The record reflects that Detective Wainwright's testimony is sufficient to establish that the cocaine had been properly authenticated and that it had not been adulterated or tampered with in any manner. Detective Wainwright testified that he scratched out and rewrote the number 8. He verified the time by referring to his police report. There was no evidence that anyone other than Detective Wainwright had possession of the cocaine before it was admitted into evidence. Accordingly, the record reflects that the Superior Court did not abuse its discretion in admitting the cocaine into evidence.

### *Proper Denial of Mistrial*

Hendricks' next contention on appeal is that his motion for a mistrial was improperly denied. During the testimony of Dover Police Department Detective Todd Case, reference was made to a court notice Detective Case found in Hendricks' hotel room. According to Hendricks, that reference was prejudicial because the jury could infer from it that Hendricks had been charged for criminal conduct on a prior occasion.

At Hendricks' trial, Detective Case testified that during the hotel room search he found several pieces of paper bearing Hendricks' name, and that one of the papers was a "standard court paper of notice." Hendricks objected to this testimony and moved for a mistrial. The trial judge denied the motion for a mistrial but immediately struck Detective Case's reference to the court papers, and instructed the jury to disregard that statement.

■ A curative instruction is generally sufficient to remedy any prejudice that may result from the jury hearing inadmissible evidence.[10] "A trial judge should grant a mistrial only where there is a 'manifest necessity' or the 'ends of public justice would be otherwise defeated.' "[11] This Court reviews the denial of a motion for mistrial for abuse of discretion.[12]

■ Hendricks has not established a

---

**6.** *Tricoche v. State*, 525 A.2d 151, 152 (Del. 1987) (quoting *Whitfield v. State*, 524 A.2d 13, 16 (Del.1987)).

**7.** *Tricoche v. State*, 525 A.2d at 152; *Ciccaglione v. State*, 474 A.2d at 130; *Lampkins v. State*, 465 A.2d 785, 790 (Del.1983); *Thompson v. State*, 399 A.2d 194, 198–99 (Del.1979).

**8.** *Murphy v. State*, 632 A.2d 1150, 1153 (Del. 1993); *Tricoche v. State*, 525 A.2d at 153; *Whitfield v. State*, 524 A.2d 13, 16 (Del.1987).

**9.** *Murphy v. State*, 632 A.2d at 1153; *Tricoche v. State*, 525 A.2d at 153; *See also Tatman v. State*, 314 A.2d 417, 418 (Del.1973); *Clough v. State*, 295 A.2d 729, 730 (Del.1972).

**10.** *Zimmerman v. State*, 628 A.2d 62, 66 (Del. 1993). *See also Mills v. State*, 732 A.2d 845, 849 (Del.1999) ("The trial judge's immediate clarifying instructions after each objection by Mills' attorney permitted the jury to properly discharge its function within the bounds of the law.").

**11.** *Steckel v. State*, 711 A.2d 5, 11 (Del.1998) (quoting *Fanning v. Superior Court*, 320 A.2d 343, 345 (Del.1974)).

**12.** *Taylor v. State*, 827 A.2d 24, 27 (Del.2003); *Ashley v. State*, 798 A.2d 1019, 1022 (Del. 2002).

manifest necessity for a mistrial.[13] Detective Case neither stated nor implied that the court papers were criminal in nature. Detective Case's reference was vague notwithstanding the prosecutor's instruction not "to identify specifically the nature of [the] paperwork." That mere reference to "court papers" did not automatically create an inference that Hendricks was involved in another criminal proceeding, or subject to other criminal charges.

▉▉▉▉ A mistrial is "mandated only when there are 'no meaningful and practical alternatives'" to granting a mistrial.[14] The practical alternative in this case, which was immediately exercised by the trial judge, was to strike Detective Case's comment from the record and to instruct the jury to disregard Detective Case's statement. The trial judge did strike the statement from the record and immediately instructed the jury to disregard the statement. It is presumed that a jury will follow the judge's instruction.[15] Detective Case's comment was not sufficiently prejudicial to warrant a mistrial.[16] Accordingly, the Superior Court properly exercised its discretion in giving a curative instruction and did not err in denying a mistrial.

### Preservation of Evidence

▉▉▉▉ Hendricks' final contention is that the Superior Court abused its discretion by denying his request for a *Lolly* jury instruction that the missing evidence, if available, would have been exculpatory.[17]

The standard of review of denial to give a jury instruction on missing evidence is plenary or *de novo*.[18] We hold that, under the circumstances in this case, the Superior Court properly denied Hendricks' request to give a "missing evidence" instruction to the jury.[19]

Upon arrest, Dover Police Department Officer Anthony Digirolomo found and confiscated $651 cash and a hotel room key from Hendricks' pants pocket. Prior to trial, Officer Digirolomo forfeited the cash to the State Law Enforcement Fund, in accordance with State procedure. Officer Digirolomo testified that he did not record the serial numbers on the seized bills and did not photocopy the bills before they were turned over to the State Law Enforcement Fund.

The hotel room key that was found in Hendricks' pants pocket led officers to Room 120 at the nearby Relax Inn. Hendricks consented to a search of his hotel room, during which officers found a small electronic digital scale, sandwich-size plastic baggies, and paperwork containing Hendricks' name. Prior to trial, the police mistakenly destroyed the digital scale and plastic bags that were found in Hendricks' possession. A detective assigned to the case mistakenly believed that Hendricks' case had been resolved, and ordered the police to destroy the digital scale and bags. Hendricks was charged with, and convicted of, possession of drug paraphernalia

---

13. *But see Bailey v. State,* 521 A.2d 1069 (Del.1987).

14. *Dawson v. State,* 637 A.2d 57, 62 (Del. 1994) (quoting *Bailey v. State,* 521 A.2d 1069, 1077 (Del.1987)).

15. *See Capano v. State,* 781 A.2d 556, 589 (Del.2001).

16. *Weddington v. State,* 545 A.2d 607 (Del. 1988).

17. *Lolly v. State,* 611 A.2d 956, 961–62 (Del. 1992).

18. *Lunnon v. State,* 710 A.2d 197, 199 (Del. 1998).

19. *See Lolly v. State,* 611 A.2d 956 (Del.1992); and *Hammond v. State,* 569 A.2d 81 (Del. 1989).

based upon the digital scale and plastic bags that were found in his hotel room.

▬▬▬ The "'obligation to preserve evidence is rooted in the due process provisions of the fourteenth amendment to the United States Constitution and the Delaware Constitution, article I, section 7.'"[20] In *Deberry v. State*, this Court adopted a unitary approach to this question, which consists of examining not only the conduct of the State, but also the nature of the missing evidence.[21] The analysis established in *Deberry* asks essentially six questions. The first three inquiries are:

> (1) [W]ould the requested material, if extant in the possession of the State at the time of the defense request, have been subject to disclosure under Criminal Rule 16 or *Brady* [*v. Maryland*];[22] (2) if so, did the government have a duty to preserve the material?; [and] (3) if there was a duty to preserve, was the duty breached, and what consequences should flow from [that] breach?[23]

If it is determined that the State breached its duty to preserve evidence, this Court will then undertake a separate three-part analysis to determine the consequences that will flow from that breach. That three-part analysis involves an examination of:

(1) the degree of negligence or bad faith involved, (2) the importance of the missing evidence considering the probative value and reliability of secondary or substitute evidence that remains available, and (3) the sufficiency of the other evidence produced at the trial to sustain the conviction.[24]

As we noted in *Hammond*, "there may well be cases in which the defendant is unable to prove that the State acted in bad faith but in which the loss or destruction of evidence is nonetheless so critical to the defense as to make a criminal trial fundamentally unfair."[25] Alternatively, there may be circumstances when the State failed to preserve evidence that was *material* to the defense and the defendant would be entitled to a missing evidence instruction but not a dismissal of the charges.[26] In this case, however, the record reflects that Hendricks was not entitled to either a dismissal of the charges or a "missing evidence" instruction, notwithstanding the unavailability of certain evidence.

### *"Missing Evidence" Instruction Properly Denied*

▬▬▬ The State concedes that all of the missing evidence would have been subject

---

**20.** *Hammond v. State*, 569 A.2d at 85 (quoting *Deberry v. State*, 457 A.2d 744, 751–52 (Del. 1983)).

**21.** *Deberry v. State*, 457 A.2d at 750.

**22.** *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (*Brady* requires the prosecution to turn over potentially exculpatory evidence to the defendant, upon request).

**23.** *Deberry v. State*, 457 A.2d at 750. *See e.g.,* *Brown v. U.S.*, 372 A.2d 557, 559 (D.C.Cir. 1977); *United States v. Grammatikos*, 633 F.2d 1013 (2nd Cir.1980); *United States v. Loud Hawk*, 628 F.2d 1139 (9th Cir.1979); *United States v. Miranda*, 526 F.2d 1319 (2nd Cir.1975). *See also Lunnon v. State*, 710 A.2d

197, 200–01 (Del.1998) (holding that where the State did not act negligently or in bad faith by failing to preserve evidence, and the missing evidence did not substantially prejudice the defendant's case, a *Lolly* instruction was not required).

**24.** *Hammond v. State*, 569 A.2d at 86 (quoting *Bailey v. State*, 521 A.2d at 1091).

**25.** *Id.* at 87 (quoting *Arizona v. Youngblood*, 488 U.S. 51, 61, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) (Stevens, J., concurring)).

**26.** *Lolly v. State*, 611 A.2d 956, 961–62 (Del. 1992) (emphasis added).

to disclosure under Superior Court Criminal Rule 16, and that the government had a duty to preserve the drug paraphernalia, but not the cash. The Superior Court concluded that the State was not negligent in forfeiting the currency because the forfeiture was consistent with the State's standard operating procedures and the defense did not request that the State record the serial numbers on the bills. We agree. Therefore, we hold that the State did not breach its duty to preserve the currency and Hendricks was not entitled to a *Lolly* "missing evidence" instruction as to the missing cash.[27]

Regarding the drug paraphernalia, the Superior Court concluded, and the State conceded, that the State had breached its duty to preserve that evidence by negligently destroying the digital scale and plastic bags. Therefore, it is unnecessary to address the three aspects of the *Deberry* analysis that inquires into the nature of this drug paraphernalia evidence. Accordingly, we proceed directly to the "consequence" portion of the *Deberry* "missing evidence" paradigm.

■ The first part of the consequence analysis is to determine the degree of negligence or bad faith involved. Dover Police Department Detective Todd Case testified about the inadvertent disposition of the evidence and the procedure for periodic disposition of evidence at the police department. He stated on direct examination that:

> [u]nfortunately we are asked to periodically go through our evidence by our technicians to see if it is still of value, and we are required as the individual officer assigned to that evidence to enter into the DELJIS computer, which is the state wide criminal computer. In that capacity you can obtain the information

of a particular criminal case and its status or disposition.

> Unfortunately in this case I interpreted the information from the computer stating that the three charges had either been pled away or disposed of; therefore, I instructed the evidence technician to dispose of the digital scale and baggies in a proper manner and that has been done, so were not physically available today.

> . . . .

> They were retained for a period of time until approximately February of this year when I then made that request accidentally and had them destroyed.

The record reflects that the Dover Police Department *mistakenly* destroyed this evidence in February 2000, prior to Hendricks' trial. There is no evidence that the State acted in bad faith. The Superior Court found that the State had been negligent, and that factual determination of negligence is supported by the record.

The second part of the consequence analysis is to determine the importance of the missing evidence after considering the probative value and reliability of secondary or substitute evidence that remains available. Hendricks argues that the missing drug paraphernalia evidence was important to his defense because, if the drug paraphernalia had been available, the defense could have tested it for drug residue or fingerprints in order to rule out Hendricks' involvement. The State submits that the absence of drug residue or fingerprints would not have changed the ultimate outcome of the case.

The third part of the consequence analysis involves an examination of the sufficiency of alternative evidence produced at the trial to sustain the conviction. The trial judge found that there was "sufficient cir-

27. *Lolly v. State,* 611 A.2d 956 (Del.1992).

cumstantial evidence based upon the testimony and observations of the officers to support a conviction on the maintaining a dwelling and possession of drug paraphernalia charges." We agree. The record reflects that Hendricks' possession of the drug paraphernalia was established independent of the missing evidence because he had a key to the hotel room in which that evidence was found, according to the police testimony at trial.

The drug paraphernalia evidence was found pursuant to a search of a place where Hendricks was staying and which was under his control. The search was performed after Hendricks had consented. All of these circumstances support the State's position that a logical circumstantial inference could be drawn that Hendricks possessed any items found in that hotel room.

The record reflects that the destruction of the digital scale and plastic bags was negligent, but was not done in bad faith. The record also reflects that there was reliable secondary testimonial evidence that made the actual availability of that drug paraphernalia unimportant to the State's case. The secondary evidence presented by the State was sufficient to establish Hendricks' guilt and to support his convictions.

The missing drug paraphernalia evidence would not have been exculpatory. Even if neither the plastic bags nor the digital scale contained drug residue or Hendricks' fingerprints, the presence of those items in his hotel room was sufficient to establish his possession of that drug paraphernalia. Therefore, the physical existence of the drug paraphernalia evidence at the time of the trial was not material to Hendricks' defense. Although Hendricks' attorney was free to argue to the jury the significance of the drug paraphernalia that was missing because of its negligent destruction, the Superior Court properly denied Hendricks' request for a "missing evidence" jury instruction.

### Conclusion

The judgments of the Superior Court are affirmed.