**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

STATE OF DELAWARE, )
)
        v. ) I.D. No. 1604008779
)
KARL BENSON, )
)
        Defendant. )

**MEMORANDUM OPINION**

Presently before the court are two motions: (1) a motion to exclude an utterance made by witness Dominique Roberson to the police; and (2) a motion under *Deberry v. State* to exclude evidence relating to phone texts or, alternatively, a motion for an adverse presumption instruction relating to those texts. The court has conducted two evidentiary hearings relating to these motions. The following summarizes the court's rulings and the reasons for them.

**Background**

Defendant is charged with Drug Dealing, Conspiracy and Possession of a Controlled Substance. According to the State, in April 2016 the police received a tip that Defendant was selling heroin and that he used a phone with the number 302-401-3806. The county police made contact with Defendant through that telephone number via text messages. The police then contacted that phone number using text messaging and arranged to purchase five bundles of heroin for two hundred dollars on April 13 at an All Stop parking lot

outside of Newark. At 2256 hours that night, an undercover police officer texted Defendant he was in the parking lot in a Chevrolet Impala, and Defendant responded he was walking toward the Impala. Shortly thereafter the police observed Defendant and a female, later identified as Dominique Roberson, approach the All Stop and pause at the front door. The female then walked over to the Impala, at which time an officer sitting in the Impala asked her "you good?" She responded "I'm good." The police testified at the first evidentiary hearing that this verbal exchange is code for ascertaining if the drug purchase is going forward. At roughly the same time as the female approached the Impala one of the police officers received a text from Defendant "I'm here." Both the female and Defendant were promptly arrested. A search of the female revealed five bundles of heroin and a white Samsung Galaxy cell phone; a search of Defendant revealed a black Samsung Galaxy phone with a cracked screen.

## Analysis

The court will first consider the objections to Roberson's question to the police about the amount of the narcotics. It will then consider the *Deberry* challenges relating to the lost phone texts.

### 1. The Roberson Question to the Police

While being transported to the station after her arrest Ms. Roberson asked the officers "Do you know how much dope it was?" Defendant seeks to exclude this statement because (1) it is hearsay and (2) admission of the statement deprives him of his right to confront the witnesses against him.

2

Ms. Roberson's question to the officers is not hearsay because it was not an "assertion." The term "hearsay" is defined by the Rules of Evidence as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[1] A key element of this definition is that the utterance[2] must be a "statement." The rules, in turn, define "statement" as "an oral or written assertion."[3] Ms. Roberson's question "do you know how much dope it was?" is not an assertion. "A question, by its very definition, is not an assertion."[4] Thus, according to the Third Circuit Court of Appeals, "[c]ourts have held that questions and inquiries are generally not hearsay."[5] The court therefore **DENIES** Defendant's motion to exclude that question on the basis of hearsay.

Defendant's second ground for the exclusion of Ms. Roberson's statement is based on the Confrontation Clause of the federal Constitution. That clause, however, is not implicated here because Ms. Roberson is available to testify at trial and is subject to cross-examination. Her availability is enough to satisfy the Confrontation Clause: "The Confrontation Clause of the Sixth Amendment gives the accused the right 'to be confronted with the witnesses against him.'

---

[1] D.R.E. 801(c).

[2] In certain instances non-verbal conduct can also amount to a statement subject to the hearsay rule. That circumstance is not present here.

[3] D.R.E. 801(a).

[4] *State v. Russo*, 700 A.2d 161(Del. Super. 1996), *aff'd mem.*, 694 A.2d 48 (Del. 1997); *see also Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 330 (3d Cir. 2005) ("Courts have held that questions and inquiries are generally not hearsay because the declarant does not have the requisite assertive intent, even if the question 'convey[s] an implicit message' or provides information about the declarant's assumptions or beliefs.").

[5] 423 F.3d at 330.

This has long been read as securing an adequate opportunity to cross-examine adverse witnesses."[6] As one federal appeals court similarly put it:

> The Confrontation Clause is satisfied when the hearsay evidence falls within a firmly rooted exception to the hearsay rule or is supported by facts that otherwise demonstrate the statement's reliability; the Confrontation Clause is alternatively satisfied when the hearsay declarant testifies at trial and is available for cross-examination.[7]

Defendant's motion to exclude Ms. Roberson's statement on the basis of the Confrontation Clause is therefore **DENIED.**

### 2. The *Deberry* Challenge to the Text Messages

The text messages exchanged between the police and the Defendant have been lost, and Defendant has moved to exclude evidence of them. Alternatively, he asks that the jury be instructed that it should presume the text messages were exculpatory. In this regard the court has made factual findings based upon the evidence adduced at the two evidentiary hearings:

- As commonly done, the police used a pre-paid cell phone when they texted the Defendant. They do this so that their cell phone numbers change frequently and therefore do not become familiar to drug dealers.

- The County police borrowed a pre-paid cell phone from a State police officer to use in this investigation. After the transaction was completed and Defendant was arrested, the County police returned the pre-paid phone to the State police officer who had lent it to

---

[6]  *United States v. Owens*, 484 U.S. 554, 557 (1988).
[7]  *Bear Stops v. U.S.*, 339 F.3d 777, 781 (8th Cir. 2003).

them. At some unknown time thereafter the pre-paid phone was lost or discarded.

- The police seized two cell phones at the time of the arrest; one belonged to Ms. Roberson and the other belonged to Defendant. The screen of Defendant's phone contained the message "Na im waitn here" and indicates it was sent at 11:20 p.m. from the borrowed pre-paid cell phone the county police were using.

- The police obtained a warrant to search Defendant's cell phone. When they attempted to search the contents of the phone's memory they were able to recover the phone's sim card, but they found that access to the phone's memory was blocked and required a password to open it.

- The forensic unit of the County Police unsuccessfully tried several non-destructive methods to obtain access to the phone's memory. After exhausting all reasonable methods the police opted to use a technique known as a "chip-off."  This method entails heating the cell phone so that the memory chip can be physically extracted. Once the memory chip is extracted it is connected to a device which attempts to read the data on the chip. The chip-off destroys the phone, and once this method is used there is no further recourse for obtaining the data in it.

- According to the forensic detective who tried to obtain the data from the phone and who performed the chip-off, the chip-off

technique has been successful approximately 85 percent of the times the county police have used it. No data has been recovered in the remaining 15 percent and, because of the destructive nature of the test, that data has likely been lost forever.

- The chip-off attempt was made on May 4, 2016—roughly three weeks after Defendant had been arrested. At no time did the police seek to obtain the pass code from Defendant or his attorney, and neither Defendant nor his attorney was notified in advance by the police that they intended to perform a destructive test. (It is unclear from the record whether Defendant was represented at that time. The earliest indication that Mr. Benson was represented is a May 13 letter from a prosecutor to Defendant's former counsel accompanying the State's discovery response.)

- With commendable candor the police admitted at the second evidentiary hearing that there were no exigent circumstances requiring an immediate chip-off attempt.

### A. The Deberry Request

Evidence sometime gets lost. When this happens the due process clause of the Delaware constitution provides protection for criminal Defendants who are harmed when the State loses evidence. The seminal case in this regard is the Delaware Supreme Court's decision in *Deberry v. State*.[8] The Defendant has shown that the Defendant's cell phone is *Deberry* material. The decision as to

---

[8]   457 A.2d 744 (Del. 1983).

6

what consequences, if any, should flow from the destruction of his telephone must await the evidence at trial and is therefore **RESERVED** until further order of the court.

In the seminal Delaware Supreme Court case *Deberry v. State*, the Defendant was convicted of rape and associated crimes. According to the evidence, the victim was cut on her hand during the assault and bled profusely, so much so that it was reasonable to expect that her blood would have been found on her assailant's clothing. The police collected the clothing Deberry wore the night of the rape, but sometime before trial that clothing was lost. Deberry, who denied any role in the assault, argued that the loss of his clothing deprived him of any chance of showing it did not have the victim's blood on it. The Supreme Court characterized the issue as "what should be done when the State takes possession of exculpatory (or potentially exculpatory) evidence and then loses or destroys it before or in response to the Defendant's discovery request."[9] The *Deberry* court posited a two step analysis to be applied when there is a claim of lost evidence. In the first step, the court considers:

> 1) would the requested material, if extant in the possession of the State at the time of the defense request, have been subject to disclosure under Criminal Rule 16 or *Brady*?
> 2) if so, did the government have a duty to preserve the material?

---

[9] *Id.* at 749.

3) if there was a duty to preserve, was the duty breached, and what consequences should flow from a breach?[10]

If the court finds a breach of a duty to preserve, the second step in the analysis entails a determination of what remedy, if any, should be provided. This involves consideration of "(1) the degree of negligence involved; (2) the importance of the missing evidence; and (3) the sufficiency of other evidence produced at trial."

The application of the first step in the *Deberry* analysis is straightforward:

> *1. Would the requested material, if extant in the possession of the State at the time of the defense request, have been subject to disclosure under Criminal* Rule 16 *or* Brady?

Defendant's telephone texts fall within this because Rule 16 obligated the State, upon request, to "disclose to the Defendant and make available for inspection . . . any relevant written or recorded statements made by the Defendant." Benson's text messages were a written statement and therefore needed to be produced.

> *2. If so, did the government have a duty to preserve the material?*

The duty to preserve the text messages on Defendant's phone readily flows from the State's obligation to produce them under Rule 16. If the State had a duty to produce the messages, it stands to reason it also had a duty to preserve them.

---

[10]  *Id.* at 750.

*3. If there was a duty to preserve, was the duty breached, and what consequences should flow from a breach?*

One copy of the text messages was lost when the prepaid phone was turned over to another officer for use in different undercover operations. The court finds that under these circumstances the police had no duty to preserve the text messages on the pre-paid police cell phone. The police had every reason to believe that the messages would be retrieved from Defendant's phone. The constitution does not require the government to preserve every exact[11] copy of a document subject to production under Rule 16. Otherwise police stations and prosecutor's offices would quickly become overrun with the multiple photocopies inevitably generated in a criminal investigation and prosecution.

A different result stems from the destruction of Defendant's phone. The police knew, or should have known it was the last copy of the text exchanges between the officer and Benson. They also knew there was roughly a 15 percent chance that the phone would be destroyed and the data lost forever during the chip-off technique. It may be that under emergency circumstances there is no duty to preserve the phone and the State would be free to perform chip-offs as a last resort. It does not take a fertile imagination to conjure up a scenario where the safety of an individual will be at risk if the data on the cell phone is not immediately accessed. The court need not decide the issue here,

---

[11] There may be a different result when a copy contains marginalia not found on the original or other copies. That issue is not before the court.

9

however, because there concededly was no urgency attached to accessing the data.

The Supreme Court has on several occasions wisely "declined to prescribe the exact procedures that law enforcement agencies in this State must follow in order to fulfill their duties to preserve evidence,"[12] and far be it from this court to ignore that advice. It notes, however, that the analysis here may have been very different if, in this non-emergent situation, the police had first given Defendant the option of providing his passcode before attempting a chip-off of his phone.

Having found that the Defendant's cell phone was *Deberry* material, the next step is to decide what consequences should flow from its loss. This requires consideration of three factors:

*1. The degree of negligence involved.*

On a zero to 10 Richter scale of negligence, the negligence here would have registered at about a 1. The court finds the officer who attempted to extract the data was well-trained and experienced. He first exhausted the non-destructive methods available to him before turning to the last resort. Even then, the officer was reasonable in assuming he would be able to preserve the data; although the failure rate for these tests at the County Police laboratory is about 15 percent, the officer involved here had lost the data only three times, two of which occurred when he was in training.

*2. The importance of the missing evidence.*

---

[12]    *See Johnson v. State*, 27 A.3d 541, 547 (Del. 2011)(explaining that the second step of the *Deberry* analysis requires an examination of the State's duty to preserve).

There is little reason to believe at this time that the data on the cell phone is central to this case. Although the loss of the data will prevent the jury from seeing the precise language used in the exchange between the Defendant and the officer, the State's case does not seem to hinge on exactly what was written between the two. It is often the case in this court that drug prosecutions proceed without recordings of conversations between confidential informants or undercover officers and the suspect. To be sure the loss of the data might hinder a future defendant's ability to argue the officer was texting to someone else's phone. But that avenue seems to have been foreclosed here because the sole retrievable message on Defendant's phone—the one that appeared on the screen when the phone was seized from him—shows that the officer was texting to Defendant's phone.

At the moment it appears there is little likelihood that the data on the cell phone would have exculpated Defendant. The absence of any potential for exculpation is a key factor in a *Deberry* analysis. In *Jones v. State,*[13] for example, the Supreme Court found that the failure to test any items seized in a drug raid for fingerprints was not a *Deberry* violation because the presence or absence of Jones' fingerprints on any particular item would not be very meaningful." Defendant Benson argues that the loss of the data prevents him from presenting a linguistics expert who might be able to testify that the word patterns in the messages show that Ms. Roberson, not Defendant, was using Defendant's phone and was the one texting with the police. When asked about

---

[13]  841 A.2d 307 (Del. 2004).

11

this at oral argument, Defendant's counsel acknowledged he had no evidence to show it was possible to make such an assessment from a few terse messages on the phone. The speculative possibility that this could be done does not elevate the data to matter of critical importance here.[14]

*3. The sufficiency of other evidence produced at trial.*

There is other evidence of the conversation, most notably the testimony of the officer who texted with Defendant. The officer prepared a report shortly after Defendant's arrest which documented the text conversation. In *Wainer v. State*[15] the Supreme Court held that no *Deberry* remedy was necessary when a police officer lost the notes he took during an interview because "the police report incorporated the substance of the notes and was written the same day the interviews were conducted."

*B. Deberry Relief*

After considering the above factors, the court must determine if relief is warranted, and if so, what relief the defendant is entitled to. Whether or not the defendant has suffered any prejudice directs this determination.

Where there is availability of reliable secondary evidence and sufficient remaining evidence to support the defendant's conviction, relief will not be afforded to the defendant. In *Hammond v. State*[16] where there was a failure to preserve a crash vehicle in a vehicular homicide case, Hammond moved for

---

[14] *See Powell v. State*, 49 A.3d 1090, 1102 (Del. 2012)("Nor can a speculative possibility of 'missing evidence' fairly be said to have 'substantially prejudiced' Powell's case.")(internal editing marks omitted).
[15] 2005 WL 535010 (Del.).
[16] 569 A.2d 81 (Del. 1989).

dismissal, or, alternatively, an instruction to the jury that the lost evidence if available would be exculpatory in nature. This court denied both motions because even in the absence of the crash vehicle, the State's case against Hammond was so strong that it was not so fundamentally unfair that Hammond's prosecution should have been barred as a denial of due process.

Where, however, the missing evidence is integral to securing a conviction, and secondary evidence is not available, this Court is permitted to give a *Lolly* instruction.[17]  Such an instruction asks the jury to infer that the missing evidence, had it been preserved, would not have incriminated the defendant and would have tended to prove the defendant not guilty.

## Conclusion

The Supreme Court has held that the determination of whether a Defendant is entitled to relief under *Deberry* must be made on the basis of the entire record. Although the record built to date suggests that Defendant will not be entitled to any relief, a complete record will provide a better gauge the centrality of the data and the prejudice caused by their loss. Therefore, the court will defer its ruling on whether Benson is entitled to relief under *Deberry* until it has heard all of the evidence.[18]

---

[17]  611 A.2d 956 (Del. 1992).

[18]  Even if the court declines to give any *Deberry* relief, Benson will be free to argue the significance of the lost data to the jury.  In *Hendricks v. State*, 871 A.2d 1118 (Del. 2005) the Court wrote:

> Although Hendricks' attorney was free to argue to the jury the significance of the drug paraphernalia that was missing because of the negligent destruction, the Superior Court properly denied Hendricks' request for a "missing evidence" jury instruction.

Date: May 31, 2017

_____

John A. Parkins, Jr.
Superior Court Judge

oc:    Prothonotary

cc:    Amanda J. DiLiberto, Esquire, Department of Justice, Wilmington, Delaware
Benjamin S. Gifford IV, Esquire, The Law Offices of Benjamin S. Gifford IV, Wilmington, Delaware