# SUPERIOR COURT
## of the
# STATE OF DELAWARE

Jeffrey J Clark
Judge

Kent County Courthouse
38 The Green
Dover, DE 19901
Telephone (302)735-2111

October 1, 2018

Gregory R. Babowal, Esquire
Lisa Whitelock, Esquire
Department of Justice
102 W. Water Street
Dover, DE  19901

Lloyd A. Schmid, Jr., Esquire
Richard F. Matoni, III, Esquire
Office of Defense Services
45 The Green
Dover, DE  19901

RE:   *State v. Larry J. Pierce*
      ID No. 1601006859

Submitted:  September 26, 2018
Decided:  October 1, 2018

Counsel:

Defendant Larry J. Pierce (hereinafter "Mr. Pierce") is charged with Murder First Degree for allegedly murdering Josue Barclay on April 18, 2009.   This Order provides the Court's decision regarding Mr. Pierce's motion *in limine* to exclude evidence of a 9mm casing (hereinafter the "subject casing") that the Dover Police allegedly recovered from the scene of the homicide.

Mr. Pierce moves to exclude this evidence as well as the testimony of its firearms identification expert, Stephen Deady (hereinafter "Mr. Deady").  Based on his February 26, 2018, testing, Mr. Deady opines that a firearm possessed at some

point by Mr. Pierce fired the round producing the subject casing. For the reasons that follow, Mr. Pierce's motion to exclude the evidence based on chain of custody concerns is **DENIED**.

## Procedural and Factual Background

Despite the fact that this trial is scheduled as a bench trial, the Court held a hearing in advance of trial pursuant to Delaware Rule of Evidence 104(a) (hereinafter "Rule 104(a)") to determine the subject casing's admissibility.[1] A primary issue generating this chain of custody dispute is the nine-year gap between the homicide and the trial. A second, and more vigorously argued issue, involves allegations that the State's first firearms examiner, Carl Rone (hereinafter "Mr. Rone"), was recently charged with falsifying business records related to his employment. He is currently awaiting trial on those charges. Mr. Rone single-handedly controlled the subject casing at issue while testing it in April 2009. Because he relies upon business records to support his testimony regarding chain of custody, Mr. Pierce asserts that the State cannot meet its chain of custody burden.

Mr. Pierce's case is three years and three months post-indictment. When the allegations involving Mr. Rone arose, Mr. Pierce was on the eve of trial. After Mr. Rone's allegations became public, the State requested a continuance to secure another firearms expert. Thereafter, Mr. Pierce filed a motion *in limine* contesting the State's ability to establish the chain of custody. At the request of both the State and Mr. Pierce's attorneys, but over the objection of Mr. Pierce himself,[2] the Court

---

[1] Notwithstanding the fact that Mr. Pierce waived his right to a jury trial, the Court elected to hold a 104(a) hearing because of the significant amount of evidence needed to prove the chain of custody for the subject casing in this case. The standard and the process for a 104(a) is the same in both a jury and a bench trial. *See* 21A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 5053.4 (2d ed. 1987) (recognizing its application in the bench trial context).

[2] Mr. Pierce refused to waive his speedy trial rights on May 17, 2018. Before that point, he had consistently waived his rights and had also requested multiple trial continuances. Because Mr.

again continued the trial until October 9, 2018. The Court rescheduled the trial for that date because it was to follow Mr. Rone's trial. In the interim, however, the Court has continued Mr. Rone's trial until after October 9, 2018.

At an office conference in August 2018, both parties and the Court discussed the fact that Mr. Rone's trial would not conclude before Mr. Pierce's trial. As a result, the Court scheduled a pre-trial hearing to resolve Mr. Pierce's motion *in limine*. The Court scheduled the hearing in advance of trial because Mr. Pierce raised significant issues regarding the effect of Mr. Rone's alleged conduct on the State's ability to establish the chain of custody of the subject casing. In addition, as the Court noted in an office conference, the State had not articulated, either through its written responses or otherwise, what evidence it had available to establish the chain of custody of the subject casing.

After Mr. Rone's separation from State employment in January 2018, the State secured Mr. Deady's opinion. Given Mr. Rone's issues, the State does not intend to offer his opinion at trial. Accordingly, Mr. Rone's testimony is only relevant for chain of custody purposes because he alone received, handled, and tested the evidence in 2009, shortly after the homicide.

The Court scheduled a stand-alone evidentiary hearing after recognizing that: (1) the State has charged Mr. Rone with falsification of business records; (2) the evidence logs and reports prepared by Mr. Rone and used to establish the chain of custody are also business records; and (3) Mr. Pierce has the right to both *voir dire* State chain of custody witnesses with questions regarding Mr. Rone's alleged conduct, and to present extrinsic evidence in a Rule 104(a) chain of custody hearing. All parties and the Court initially operated under the assumption that Mr. Rone would not testify. That changed, however, when Mr. Pierce very recently notified

Pierce asserted his rights as of May 17, 2018, and still does, the Court denied his counsel's request on his behalf to continue the trial until after the final disposition of Mr. Rone's case.

3

the Court that the State would present Mr. Rone's testimony at the hearing. On the first day of the hearing, the State provided Mr. Rone testimonial immunity and then presented his testimony.

Over two days, the Court heard testimony from several State witnesses, including Mr. Rone. The record before the Court includes: the testimony and exhibits offered at the chain of custody hearing; Mr. Rone's prior sworn testimony and exhibits offered at a *Daubert* hearing on January 12, 2018; and Mr. Deady's sworn testimony and the exhibits offered at his *Daubert* hearing on April 25, 2018.

## Mr. Pierce's Arguments

At the conclusion of the Rule 104(a) hearing, Mr. Pierce argued that the State failed to meet its obligations regarding chain of custody because of the nature of the item at issue, and because the State relied on the professional integrity of Mr. Rone to meet its burden. Mr. Deady examined a 9mm casing recovered from the homicide scene that was in Mr. Rone's sole possession for a time. At the hearing, Mr. Rone testified that he normally test fired four like caliber rounds and compared their casings to a subject casing. When performing his comparative analysis, all four of the test casings would be kept on one side of the testing table while the subject casing remained on the other side of the testing table at all times. After firing the test rounds, in Mr. Pierce's case, Mr. Rone compared the test casings to the subject casing under a microscope, as was his regular practice, and offered his opinion at a *Daubert* hearing that the test casings and the subject casing were fired from the same firearm allegedly possessed by Mr. Pierce.

Given this practice, Mr. Pierce argues that there was a significant opportunity for misidentification or commingling of the subject round with a test round. On balance, Mr. Pierce argues that Mr. Rone could have commingled the rounds by either inadvertently or advertently switching a test round for the subject round. If this were to happen, Mr. Deady's subsequent analysis nine years later would in fact

4

be comparing an old test round to a new test round, and would thus mistakenly link the firearm to the scene of the homicide.

With regard to broader chain of custody concerns, Mr. Pierce also argues that there is no evidence regarding how Mr. Rone handled the evidence during the time of his April 2009 examination. Likewise, he argues there is no such evidence regarding Mr. Deady's 2018 testing. This lack of evidence, he argues, creates significant breaks in the chain of custody. He also argues that a discrepancy between the Dover Police Department's computer logged evidence entries, and the envelope housing the evidence, demonstrate breaks in the chain of custody.

Finally, Mr. Pierce acknowledges that Delaware law provides that the State's burden regarding chain of custody is lenient and that breaks in that chain generally go to the weight the trier of fact must give the evidence, rather than its admissibility. Mr. Pierce argues, however, that this is an extraordinary case as recognized by the Delaware Supreme Court's recent Superior Court Criminal Rule 61 decision in *Fowler v. State*.[3] Given the significant concerns raised regarding Mr. Rone's credibility, and the obvious fact that he is a critical link in the chain of custody, Mr. Pierce urges the Court to exclude the evidence from trial.

**Standard**

There are two common ways to establish the chain of custody. First, the proponent can establish that the evidence was in the exclusive possession of identified individuals from the time first obtained until the time examined by the expert (in this case, Mr. Deady).[4] Second, the proponent can establish that the evidence was packaged in a way that eliminated the possibility of tampering or

---

[3] *Fowler v. State*, 2018 WL 4057249, at *9 (Del. Aug.27, 2018)
[4] Thomas A. Mauet & Warren D. Wolfson, *Trial Evidence*, 311 (Wolters Kluwer 5th ed. 2012).

alternation.[5]  It also follows that a combination of these two methods can properly establish the chain of custody.

In the absence of a witness visually identifying an item as the item involved in the crime, the State "may establish a chain of custody which indirectly establishes the identity and the integrity of the evidence by tracing its continuous whereabouts."[6] The subject casing does not have unique characteristics that would distinguish it from any other 9mm casing from the same manufacturer.  With regard to evidence such as this, the chain of custody process is an appropriate method for authentication pursuant to Delaware Rule of Evidence 901.[7]  The burden is on the State to establish the chain of custody.  In doing so, the burden has been described as a lenient one.[8] Namely, the State is "required to eliminate the possibilities of misidentification and adulteration, not absolutely, but as a matter of reasonable probability."[9]

In the context of Rule 104(a) hearing to determine admissibility, the Court must, by a preponderance of the evidence, determine if the proponent circumstantially demonstrates that the evidence was not altered, contaminated, or substituted between the time it was first recovered and the time it was tested.[10]  This issue is a preliminary question where the Court is not bound by the rules of evidence.[11]  If the State meets this standard, then any breaks in the chain of custody or other impeaching factors go to the weight to be assigned the evidence by the trier

---

[5] *Id.* at 312.
[6] *Guy v. State*, 913 A.2d 558, 564 (Del. 2006).
[7] *State v. Irwin*, 2014 WL 6734821, at *10 (Del. Super. Nov. 17, 2014), aff'd *Irwin v. State*, 132 A.3d 751 (Table) (Del. Feb. 2, 2016).
[8] *Mills v. State*, 131 A.3d 806 (Table), 2016 WL 152975, at *1 (Del. Jan. 8, 2016).
[9] *Whitfield v. State*, 524 A.2d 13, 16 (Del. 1987).
[10] D.R.E. 104(a).
[11] *Id.*

of fact.[12]   Ultimately, the proponent must establish by a preponderance of the evidence that the item is what he or she claims.[13]

### The Court's Findings Regarding Admissibility

The Court finds that the State has met its burden of showing more likely than not that Mr. Deady compared a 9mm casing found from within ten feet of the alleged victim's body on August 18, 2009, to the casing from a test round he fired on February 26, 2018.   Thus, the Court does not find that Mr. Rone advertently or inadvertently comingled a test casing with the subject casing when he handled the subject casing in 2009. In so finding, the Court has considered the documents Mr. Pierce submitted, and also Mr. Rone's testimony.

*For purposes of this hearing only,*[14] the Court finds more likely than not that Mr. Rone falsified time records and received pay from the State of Delaware as a result of inaccurate time verifications in 2016 and 2017.   The Court also finds by a preponderance of the evidence that he worked out of State for the New York State Police and also at a Washington D.C. laboratory on numerous days that he also collected pay from the State of Delaware.

The Court has also considered Defense Exhibit for Identification "D."[15]   That document, produced by the State in discovery, lists times worked by various Delaware State Police Homicide Unit employees during April 2009.   Mr. Rone worked in that unit during 2009 when he performed comparative testing with the

---

[12] *Demby v. State*, 945 A2d 593 (Table), 2008 WL 534273, at *2. (Del. Feb. 28, 2008).

[13] D.R.E. 901(a).

[14]  At this hearing, Mr. Rone was not afforded the opportunity to present a defense.  Nor did the State seek to rehabilitate him after Mr. Pierce's cross-examination. Accordingly, this finding is based upon the lesser evidentiary standard required in a Rule 104(a) hearing and applies only to the Court's chain of custody finding in Mr. Pierce's case. It will carry no weight in Mr. Rone's pending trial.

[15] This document was not entered into evidence for purposes of the hearing by the Defendant. Nevertheless, the Court has considered it as such for purposes of this hearing under the relaxed evidentiary standards appropriate in a Rule 104(a) hearing.

subject casing. As a business record of the State, it constitutes an admission that Mr. Rone was in fact not working during the entire week that he was to have tested the subject casing.

As the finder of fact in this preliminary proceeding, however, the Court finds credible Mr. Rone's testimony that (1) he performed his testing when his records created during and after the testing of the firearm reflected he did, and that (2) his process eliminated the risk of misidentification, commingling, or tampering to a reasonable probability. In addition to evaluating Mr. Rone's demeanor and the consistency of his testimony, the Court also finds that other evidence of record corroborates his testimony validating his link in the chain of custody. Specifically, Mr. Rone's testing documentation, introduced at his January 2018 *Daubert* hearing, corroborates that he did in fact perform the testing. Furthermore, the Court finds overlapping consistency between the Forensic Firearms Services Unit evidence control sheets and the Dover Police Department's evidence logs. The combination of these corroborating consistencies, Mr. Rone's testimony, and documents from Mr. Rone's April 2009 testing of the subject casing satisfies the Court that his evidence handling did not create a break in the chain of custody.

The Court's limited finding for purposes of this hearing regarding Mr. Rone's falsification of business records creates a significant issue that the Court has carefully weighed. Mr. Pierce is correct in that payroll records, chain of custody records, and testing records are all "business records." In the Court's overall evaluation, however, the Court does not find the same motivation to be present when submitting records seeking extra pay that was not earned, compared to submitting allegedly false evidence logs and testing documentation when handling evidence. There is significant dissimilarity between these two types of business records. Likewise, the two types of duties at issue regarding Mr. Rone's payroll submissions versus his expert testing and evidence processes have significant differences. As a

8

final matter in the Court's evaluation, Mr. Rone's false verifications in his payroll records occurred in 2016 and 2017. In contrast, Mr. Rone's relevant participation as a link in the chain of custody for the subject casing was in 2009.

Finally, the Court has considered the Defense exhibit seeking to show Mr. Rone was not present during the week he handled the evidence in April 2009. It does not change the Court's findings. There is no evidence of record that Mr. Rone provided information relevant to it or evidence regarding its accuracy. Although the Court accepts the exhibit as an admission by a party-opponent, because it is apparently the State's record, it lacks context in the current matter.

Mr. Pierce strongly emphasizes the *Fowler* decision's holding. When denying the defense's continuance request, the Court provided its reasoning for distinguishing that case from the case at hand. Namely, *Fowler* involved a Superior Court Criminal Rule 61 proceeding where Mr. Rone's expert testimony was a linchpin of the State's case.[16] Here, the State offers his testimony for only chain of custody purposes. Moreover, the Court in this very different context, has nevertheless considered and evaluated the concerns raised by the Delaware Supreme Court in the *Fowler* decision. In contrast to the postconviction issue in *Fowler*, for purposes of this chain of custody hearing, Mr. Pierce had full opportunity to subpoena evidence regarding Mr. Rone's conduct and to cross-examine Mr. Rone. The Court has considered that evidence and Mr. Rone's credibility in its decision.

With regard to the chain of custody concerns from 2009 through 2018, the Court also finds that the State submitted sufficient chain of custody evidence eliminating evidence of tampering, altering, or misidentification from the time of initial identification through Mr. Deady's testing of the subject casing. First, the State provided evidence identifying the subject casing as the one recovered from the

---

[16] *Fowler*, 2018 WL 4057249, at *9.

9

homicide scene. Namely, Dover Police personnel testified that they recovered it within ten feet of the alleged victim's body in April 2009. Furthermore, the State submitted evidence tracing the continuous whereabouts of the evidence from that point until Mr. Deady tested the subject casing in 2018. An errant reference to "DFS" on the Dover Police Department's computerized evidence log and the missing written reference to April 12, 2018, on the evidence envelope do not establish a significant break in the chain of custody. In those instances, the Delaware State Police evidence control sheets provide the mirror image of what happened with regard to the errant entries. Those control sheets confirm *from the laboratory's* side that the evidence was in fact transferred to the proper locations at the dates represented, notwithstanding the Dover Police Department's clerical errors.

## Conclusion

In conclusion, Defendant Larry Pierce's motion *in limine* is **DENIED**. The State has met its preliminary burden of establishing an adequate chain of custody by showing more likely than not that the subject casing analyzed by Mr. Deady was the casing recovered from the homicide scene in 2009. Accordingly, evidence regarding the subject casing, and evidence flowing from that casing, will be admissible at trial.[17] Given the significant issues raised by Mr. Pierce in this motion, this Order should not be read as an opinion regarding what weight will be due this evidence at trial which will begin as scheduled on October 9, 2018.[18]

---

[17] The Court has already denied Mr. Pierce's *Daubert* motion seeking to bar Mr. Deady's testimony. After that April 2018 decision, the only remaining issues regarding its admissibility were the chain of custody concerns raised in the instant motion.

[18] The parties are strongly encouraged to determine to what extent the evidence in this two-day hearing can be included as evidence at trial, pursuant to stipulation. In the absence of a stipulation, however, since the Court must assess its ultimate weight, both parties are hereby placed on notice that notwithstanding the presentation of evidence at the Rule 104(a) hearing, any evidence to be considered by the Court in the trial must be presented to the Court during the course of the trial.

**IT IS SO ORDERED**.

/s/ Jeffrey J Clark
Judge

JJC/dsc

11