# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STEPHEN HAIRSTON, | § | |
| | § | No. 53, 2020 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | ID No. 1806008732(N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: January 13, 2021
Decided: March 19, 2021

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

Upon appeal from the Superior Court. **REVERSED** and **REMANDED**.

Nicole M. Walker, Esquire, OFFICE OF PUBLIC DEFENDER, Wilmington, Delaware, *for Appellant Stephen Hairston*.

Brian L. Arban, Esquire, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, *for Appellee State of Delaware*.

**TRAYNOR**, Justice:

In 1994, the Delaware General Assembly enacted a statute, applicable to both criminal and civil proceedings, that eases the evidentiary burden on the proponent of controlled-substance-testing evidence. The statute, which is found at 10 *Del. C.* §§ 4330–4332 and which we will refer to in this opinion as Subchapter III,[1] allows for the admission of, and a favorable presumption relating to, written reports from a forensic toxicologist or forensic chemist, without the necessity of their appearance in court, so long as the report complies with certain requirements. In criminal proceedings, in apparent recognition of the rights of an accused to confront witnesses, the statute also requires the State, upon written demand by the defendant, to produce at trial certain designated persons, including the testing analyst, or any person in the chain of custody as defined by the statute, as prosecution witnesses.

After Stephen Hairston was indicted on several criminal offenses, including serious drug offenses, he served a written demand on the State, which, by the unambiguous terms of the statute, required the presence at trial of, among other individuals, the officer who seized and packaged the substances that formed the basis of Hairston's drug offenses. Upon the State's pretrial motion *in limine*, however, the Superior Court, believing that the seizing and packaging officer was unavailable, relieved the State of its obligation to produce him and permitted another officer who

---

[1] Sections 4330 through 4332 of Title 10 comprise Subchapter III of Chapter 43 of Title 10.

was present at the scene of Hairston's apprehension to appear in the seizing and packaging officer's stead. The Superior Court's ruling, according to Hairston, erroneously relieved the State of a mandatory statutory duty and violated Hairston's rights under the Confrontation Clause of the Sixth Amendment of the United States Constitution.

In this opinion, we hold that the Superior Court's interpretation of the statute in question was erroneous as a matter of law and that, absent the appearance of the witness identified in Hairston's demand, it was error for the court to admit the forensic chemist's report and testimony. We therefore reverse.

## I.

In June 2018, Corporal Lynch and Corporal Bartolo of the Wilmington Police Department were on patrol when they observed a sport utility vehicle with dark after-market window tint. A vehicle registration inquiry revealed that the vehicle did not have a waiver for the after-market window tint as required by Delaware law. After observing the SUV make a turn without signaling, the officers pulled the SUV over.

Corporal Lynch approached the driver's side of the SUV. Stephen Hairston, the driver of the SUV, provided Lynch with a copy of the vehicle's registration. As Corporal Bartolo approached the passenger side of the SUV, he noticed the driver look back at the officers "and then reach over into the front passenger area of the

vehicle and retract his hand quickly."[2] Once at the passenger's window, Corporal Bartolo detected an odor of marijuana coming from the SUV and noticed a knotted plastic bag containing a powdery substance on top of a cup in plain view at the passenger's feet.

The officers removed Hairston and the passenger from the SUV to conduct a search of the vehicle. Hairston and the passenger stood near the rear of the SUV under the supervision of two additional police officers—Corporals MacNamara and Akil—who had arrived on the scene. As Lynch and Bartolo searched the SUV, Hairston fled. Corporal MacNamara chased Hairston and eventually subdued him. Corporal Bartolo left the SUV to assist MacNamara in arresting Hairston and bringing him back to the scene of the motor vehicle stop. Bartolo and MacNamara conducted a search of Hairston incident to arrest, which produced $768 in cash, but no weapons or contraband.

Corporal Bartolo testified that, after Hairston was taken into custody and searched, he returned to the SUV to assist Corporal Lynch with the vehicle search. According to Bartolo, after he returned to the SUV, he observed Corporal Lynch recover the plastic bag of a white powdery substance that Bartolo had observed at the beginning of the stop from the passenger's side floor and a small bag of a green leafy plant-like substance from the center console.

---

[2] App. to Opening Br. at A49.

Hairston was indicted on drug-related offenses, including aggravated possession of heroin and possession of marijuana as well as resisting arrest and various motor vehicles offenses. Before trial, Hairston made a demand on the State under 10 *Del. C.* § 4332 requesting the presence of "all persons involved in the chain of custody of any evidence."[3] Trial was initially scheduled for January 2019 but was continued three times until September 2019 because Corporal Lynch, who, as the seizing and packaging officer, was part of the chain of custody as defined by 10 *Del. C.* § 4331, was on medical leave and, according to the State, "unavailable as a witness."[4]

Because Corporal Lynch was still on medical leave in September 2019, the State filed a motion *in limine* asking the Superior Court to admit the drug evidence and "allow Corporal Bartolo testimony to satisfy the chain of custody of the evidence seized."[5] The State argued that, although "Corporal Bartolo was not the officer who physically handled the evidence, he personally observed the chain of custody process . . . [and therefore his] testimony would suffice as to eliminate any possibility of misidentification of the evidence seized."[6] The court granted the State's motion over

---

[3] *Id.* at A14.
[4] App. to Answering Br. at B1. The State does not allege in its motion *in limine* that Corporal Lynch was unavailable, *i.e.*, could not be present to testify because of infirmity or physical illness, *see* D.R.E. 804(a)(4), only that he "was injured in the line of duty and is still out on medical leave." App. to Opening Br. at A17.
[5] *Id.* at A19.
[6] *Id.* at A18.

Hairston's opposition. Recognizing this as an issue of first impression in Delaware, the court based its decision on the general standards for authentication of evidence under Delaware Rule of Evidence ("D.R.E.") 901(a), observing that, when the sponsoring witness

> is a direct eyewitness and participant in the search, and directly observed the seizure and packaging, . . . there is, for admissibility purposes, a reasonable probability that the evidence offered is what the proponent says it is, and that the evidence has not been misidentified, and no tampering, or adulteration, occurred for purposes of the seizing officer and packaging officer portion of the testimony.[7]

Thus, at trial, Corporal Bartolo testified in place of Corporal Lynch. Bartolo testified that he "observed the recovery [of the drugs] from the vehicle, transporting it to [the police station], the field testing of the substances, packaging, and submitting all substances into evidence."[8] Bartolo also testified that the drug evidence presented by the State at trial was "in the same, or substantially the same, condition"[9] as when it was recovered from Hairston's vehicle. The State also produced the forensic chemist who testified that the proper protocols were followed during the testing of the substances recovered from Hairston's vehicle and that the evidence presented at trial did not show any signs of tampering.

---

[7] *Id.* at A31.
[8] *Id.* at A60.
[9] *Id.* at A63–64.

6

The prosecutor then walked the chemist through her Forensic Chemistry Unit Controlled Substances Section Laboratory Report, which showed that one of the tested substances, weighing 6.6255 grams, contained heroin and the other, weighing 2.3363 grams, was marijuana. At the close of the direct examination of the chemist, the State offered—and the court admitted, over Hairston's "prior objections"[10]—the chemist's report as a trial exhibit. The jury returned a guilty verdict against Hairston for aggravated possession of heroin, possession of marijuana, resisting arrest, and various motor vehicle offenses.

On appeal, Hairston argues that the Superior Court "erred as a matter of law . . . when it relieved the State of its statutory duty to produce the officer who seized and packaged the drug evidence."[11] Hairston contends that the plain language of Subchapter III requires the State, upon the defendant's request, to ensure the presence of all individuals in the chain of custody, as defined by Section 4331, at trial. Hence, because the State failed to produce Corporal Lynch—the seizing and

---

[10] App. to Answering Br. at B21. We understand these "prior objections" to have been (i) Hairston's opposition to the State's motion *in limine* to allow Corporal Bartolo to testify in lieu of requiring the presence of Corporal Lynch under Section 4332, and (ii) an objection made during the chemist's testimony, challenging the chain of custody on the grounds that other persons who did not testify at trial had touched the evidence and that their presence was also required under Section 4332. *See id.* at B19. Notably, the court overruled the latter objection based on its interpretation of Section 4331's delimitation of chain-of-custody witnesses. So it would seem as though the State enjoyed the benefit of Section 4331's chain-of-custody restrictions, but at the same time was excused from complying with Section 4332's obligations.

[11] Opening Br. at 8.

packaging officer—at trial, Hairston argues that his drug-related convictions must be reversed.[12]

For its part, the State contends that Section 4331 and Section 4332 of Subchapter III only "eliminate the need for repetitive witnesses and . . . [do] not supplant the common law standard for authentication [or D.R.E. 901(a)]."[13] Accordingly, the State argues that the Superior Court properly relied on Delaware's general standards for the authentication of evidence when it found that the State could properly establish the chain of custody and authentication of the seized drugs through Corporal Bartolo's testimony.

## II.

Although we generally review the Superior Court's ruling admitting or excluding evidence for abuse of discretion,[14] where the Superior Court's ruling involves an interpretation of a statute, our review is *de novo*.[15]

---

[12] Hairston argues that the Superior Court's grant of the State's motion *in limine* also denied him his constitutional right to confront a witness against him, in violation of the Confrontation Clause of the Sixth Amendment of the United States Constitution. Because we find that the Superior Court erred by allowing the State to produce a substitute witness in place of the seizing and packaging officer, we need not address Hairston's constitutional argument.

[13] Answering Br. at 15.

[14] *Milligan v. State*, 116 A.3d 1232, 1235 (Del. 2015) (citing *Fuller v. State*, 860 A.2d 324, 329 (Del. 2004)).

[15] *Dennis v. State*, 41 A.3d 391, 393 (Del. 2012) (citing *Taylor v. Diamond State Port Corp.*, 14 A.3d 536, 538 (Del. 2011)).

III.

Because the Superior Court approached the issue raised by the State's motion *in limine* purely as an authentication issue and, in essence, found that authentication sufficient to satisfy D.R.E. 901(a) obviates the requirements set forth in Subchapter III, we begin our analysis with a comparison of D.R.E. 901(a) and Subchapter III.

A.

Under D.R.E. 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."[16] When the State seeks to authenticate by establishing chain of custody, it is not required "to produce evidence as to every link in the chain of custody. Rather, the State must simply demonstrate an orderly process from which the trier of fact can conclude that it is improbable that the original item has been tampered with or exchanged."[17] This Court has ruled that, where there are inconsistencies or gaps in the testimony offered to establish the authenticity of the evidence, the "factual discrepancies, and the inferences to be drawn from them, go to the weight to be accorded the evidence rather than to its admissibility."[18]

---

[16] D.R.E. 901(a).
[17] *Demby v. State*, 695 A.2d 1127, 1131 (Del. 1997) (citing *Tricoche v. State*, 525 A.2d 151, 153 (Del. 1987)).
[18] *Id.* at 1132.

Whereas D.R.E. 901(a) lays down a general rule for the authentication of evidence, Subchapter III sets forth the rules for "establishing that physical evidence in a criminal or civil proceeding constitutes a particular controlled substance defined under Chapter 47 of Title 16."[19] Thus, and despite its subtitle—"Chain of Custody"—Subchapter III addresses much more than the issues of authentication and chain of custody in a drug case; it establishes a procedural framework for the admission and consideration of controlled-substance-testing evidence in both criminal and civil proceedings.

Subchapter III's first section—Section 4330—begins with a 208-word long sentence that sanctions the admissibility of the reports of forensic toxicologists and forensic chemists under certain conditions. To unpack this sentence's many moving parts, we find it helpful to view its constituent parts separately:

1. For the purpose of establishing that physical evidence in a criminal or civil proceeding constitutes a particular controlled substance defined under Chapter 47 of Title 16,

2. A report signed by the forensic toxicologist or forensic chemist who performed the test or tests as to its nature shall be prima facie evidence, without the necessity of the forensic toxicologist or forensic chemist personally appearing in court, that:

   a. the material delivered was properly tested under procedures approved by the Division of Forensic Science;

   b. those procedures are legally reliable;

---

[19] 10 *Del. C.* § 4330.

c. the material was delivered by the officer or person stated in the report; and

d. the material was or contained the substance therein stated.

3. To qualify for this favored evidentiary treatment, the report must:

a. identify the forensic toxicologist or forensic chemist as an appropriately certified individual;

b. state that the toxicologist or chemist analyzed the materials under approved procedures; and

c. state that the substance is or contains the controlled substance specified.

The second, more concise sentence in Section 4330 states that the provisions of the first sentence do not "preclude[] the right of any party to introduce any evidence supporting or contradicting the evidence contained in or the presumption raised by the report."[20]

Under 10 *Del. C.* § 4332, "in a criminal proceeding, the prosecution shall, upon written demand of a defendant filed in the proceedings at least 5 days prior to trial, require the presence of the forensic toxicologist or forensic chemist, or any person in the chain of custody as a prosecution witness"[21] at trial. Section 4331 defines the chain of custody "in the context of controlled dangerous substances" as

a. the seizing officer
b. the packaging officer, if the packaging officer is not also the seizing officer; and

---

[20] *Id.*
[21] 10 *Del. C.* § 4332. The timeliness of Hairston's Section 4332 demand is not challenged in this case.

11

c.   the forensic toxicologist or forensic chemist or other person who actually touched the substance and not merely the outer sealed package in which the substance was placed by the law-enforcement agency before or during the analysis of the substance.[22]

It is noteworthy that the statute does not limit the defendant's right to demand the presence of the individuals identified as being within the chain of custody to cases in which the prosecution seeks to avail itself of Section 4330's presumptions; in fact, Section 4330's (and Section 4331's[23]) provisions concerning prima facie evidence do not apply to the testimony of witnesses appearing in response to a defendant's demand under Section 4332.

Thus, Subchapter III establishes a relatively simple framework for the introduction and consideration of controlled-substance-testing evidence. As applied in a criminal proceeding, in the absence of a timely demand by the accused, a written report of the prosecution's testing analyst is admissible and presumed to be accurate even in the absence of the analyst's appearance in court so long as the report checks the boxes listed in Section 4330. The prosecution may choose, as it did here, to call the testing analyst to testify as to the nature of the tested substance, instead of

---

[22] 10 *Del. C.* § 4331.

[23] Section 4331 allows the State, in a criminal or civil proceeding, to establish the chain of custody by submitting into evidence a statement signed by each party in the chain of custody affirming that one person delivered the controlled-substance evidence to another on a given date. So long as certain listed conditions are met, the signed statement "is prima facie evidence that the person had custody and made the delivery as stated, without the necessity of a personal appearance in court by the person signing the statement." *Id.*

offering a qualifying report under Section 4330. But, regardless of the prosecution's choice, if the accused makes a timely demand under Section 4332, the prosecution must require the presence of the analyst or any person in the chain of custody, as defined in Section 4331, as a prosecution witness so that, among other things, they may be cross-examined by the defendant. In turn, Section 4331 strictly limits those deemed to be in the chain of custody in a manner that, as this Court observed in *Demby v. State*, "eliminate[s] the logistical and financial burden that the State would have if it were required to produce at trial every person who handled the evidence, irrespective of how tangential the contact might have been."[24]

Viewed in this light, Subchapter III is designed to streamline and facilitate the reception of controlled-substance-testing evidence in a way that, under most circumstances, reduces the prosecution's burden. But though the statute might ease the prosecution's obligations, it does not eliminate them and instead demands something—and that, not much—in return.

The one imposition on the State, according to the plain language of Section 4332, is a mandatory obligation to produce at trial upon the defendant's request the individuals that the legislature has defined in Section 4331 as the "chain of custody." We find no ambiguity in the requirement that the State produce three witnesses: (1) the seizing officer, (2) the packaging officer, if different than the seizing officer, and

---

[24] *Demby*, 695 A.2d at 1132.

13

(3) the forensic toxicologist or forensic chemist.[25]  By their plain terms, Sections 4331 and 4332 do not contemplate or permit the substitution of another witness in the place of the specifically identified witnesses, even if that witness might, in the absence of Subchapter III, be an appropriate authentication or chain of custody witness under D.R.E. 901(a).  Interpreting the statute in the manner advocated by the State, to allow the State to produce any individual so long as that person is able to sufficiently establish admissibility under D.R.E. 901(a), would render Section 4332(a)(1) a nullity and Section 4331 superfluous.

B.

The State acknowledges that Subchapter III's requirements are unambiguous[26] and concedes that it did not comply with them.[27]  But it claims that the prosecution's ability to authenticate the controlled substance that is offered into evidence under D.R.E. 901(a) excuses its failure to comply with Subchapter III's clearly stated requirements.  To interpret the statute otherwise, according to the

---

[25] In its definition of the chain of custody, Section 4331 also refers to "other person[s] who actually touched the substance and not merely the outer sealed package in which the substance was placed by the law-enforcement agency before or during the analysis of the substance."  10 *Del. C.* § 4331.  Hairston objected to the admission of the chemist's conclusions based on the absence of testimony from an analyst other than the testifying chemist.  The court overruled that objection.  *See supra* note 10.  Hairston has not appealed that evidentiary ruling, so we do not address it in this opinion.
[26] During oral argument, Chief Justice Seitz asked counsel for the State whether the statute was ambiguous.  Counsel conceded: "No, there's no ambiguity in the plain language of the statute."  Oral Argument Video at 24:39–24:41, https://livestream.com/accounts/5969852/events/9467041/videos/215988138.
[27] *Id.* at 19:08–19:18.

State, would mean that Subchapter III has superseded the common law of evidence authentication as embodied in D.R.E. 901(a).  Citing *A.W. Financial Services, S.A. v. Empire Resources, Inc.*,[28] the State argues that, because Subchapter III does not clearly manifest a legislative intent to supersede the common law, it has not done so. And if there has been no superseder of D.R.E. 901(a), it remains as a gateway to the admission of drug-testing evidence independent of compliance with Subchapter III.

The State's superseder argument based on *A.W. Financial Services* misses the mark.  In that case, this Court noted that we will find an implicit repeal of the common law "only 'where there is fair repugnance between the common law and the statute, and both cannot be carried into effect.'"[29]  But no one—neither Hairston nor this Court—contends that Subchapter III supersedes D.R.E. 901(a), which continues to state the evidentiary rule governing the authentication and identification of evidence.

As mentioned before, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."[30]  In a criminal prosecution, the State may satisfy the authentication requirement in one of two ways. "The State may have witnesses visually identify the item as that which was actually

---

[28] 981 A.2d 1114 (Del. 2009).
[29] *Id.* at 1122 (quoting 15A C.J.S. *Common Law* § 16).
[30] D.R.E. 901(a).

15

involved with the crime, or it may establish a chain of custody which indirectly establishes the identity by tracing its continuous whereabouts."[31]   Subchapter III does not eliminate this threshold evidentiary requirement; instead, it creates an avenue for the introduction of controlled-substance-testing reports and delimits chain-of-custody witnesses to the seizing officer, the packaging officer, and the testing analyst or other person who has actually touched the substance.  In turn, it makes clear that a defendant may demand the appearance at trial of certain designated individuals in the chain of custody as prosecution witnesses.  The defendant may then cross-examine those witnesses—not substitutes of the prosecution's choosing—on the authenticity of the evidence or any other topic within the proper scope of cross-examination.  This right does not hinge on the path the prosecution takes to authenticate or identify the substance it seeks to admit.

Here, Hairston made a proper and timely demand on the State to produce "all persons involved in the chain of custody of any evidence."[32]   Under the plain meaning of Sections 4331 and 4332, the State was then required to produce Corporal Lynch, the seizing and packaging officer.  Despite the fact that Corporal Bartolo participated in the stop and subsequent search of Hairston's vehicle, he was not present for the entire motor vehicle search—including when he assisted Corporal

---

[31] *Quinn v. State*, 841 A.2d 1239, 1241 (Del. 2004) (quoting *Tricoche*, 525 A.2d at 153).
[32] App. to Opening Br. at A14.

16

MacNamara in pursuing Hairston as he fled the scene of the stop and when he assisted Corporal MacNamara in searching Hairston's person after he was arrested—and was also not the officer that physically seized and packaged the substances from Hairston's SUV. Thus, his appearance did not satisfy the State's obligation to require the presence of the seizing and packaging officer as a prosecution witness at Hairston's trial. In that witness's absence, it was reversible error to admit the forensic chemist's testimony and report.

This interpretation of Sections 4331 and 4332 conforms with the "'elementary rule of [statutory] construction that effect must be given, if possible, to every word, clause and sentence of a statute.'"[33] Where, as in Subchapter III, the General Assembly has unambiguously granted a criminal defendant the right to demand the presence at trial of certain specified individuals, our role is not to override or create an exception to that right. Instead, we must give it effect.[34]

---

[33] *State v. Croce*, 1997 WL 524070, at *4 (Del. Super. Ct. May 14, 1997) (quoting 2A Norman Singer, *Sutherland Stat. Const.* § 46.06 (5th ed. 1992)).

[34] *See Chase Alexa, LLC v. Kent Cnty. Levy Court*, 991 A.2d 1148, 1151 (Del. 2010) ("The rules of statutory construction are designed to ascertain and give effect to the intent of the legislators, as expressed in the statute. First, the Court must determine whether the statute is ambiguous, because if it is not, then 'the plain meaning of the statutory language controls.'" (footnote omitted) (quoting *Dir. of Revenue v. CNA Holdings, Inc.*, 818 A.2d 953, 957 (Del. 2003))).

IV.

For the foregoing reasons, we reverse the Superior Court's judgment as to Hairston's convictions of aggravated possession of heroin and possession of marijuana and remand for proceedings consistent with this opinion.